**Inga Britt LILLBASK as Legal Guardian on Behalf of Lindsey MAUCLAIRE, Plaintiff,**

v.

**Theodore S. SERGI, et al., Defendants.**

**No. Civ. 3:97cv1202(PCD).**

United States District Court, D. Connecticut.

Sept. 29, 2000.

Winona Wellman Zimberlin, Hartford, CT, Arthur Allan Smith, Education Law Project, Inc., Mansfield Center, CT, for Plaintiff.

Seth R. Klein, Attorney General's Office, Hartford, CT, Richard J. Buturla, Marsha Belman Moses, Berchem, Moses & Devlin, P.C., Milford, CT, Nyle Kimrick Davey, Attorney General's Office, Health & Human Services, Hartford, Ct, for Defendants.

## RULING ON PENDING MOTIONS FOR SUMMARY JUDGMENT

DORSEY, Senior District Judge.

State Defendants move for summary judgment. State Defendants' motion is granted in part and denied in part.

Plaintiff moves for summary judgment against State Defendants. Plaintiff's motion is granted in part and denied in part.

Redding Defendants move for partial summary judgment. Redding Defendants' motion is granted in part and denied in part.

Plaintiff moves for summary judgment against Redding Defendants. Plaintiff's motion is granted in part and denied in part.

## I. JURISDICTION

This court has subject matter jurisdiction to hear this case pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331.

## II. BACKGROUND

### A. Factual Background

Lindsey Mauclaire, a handicapped child, receives special education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. He is cared for by Ms. Lillbask, his guardian, who has made many sacrifices to care for Lindsey. (Dkt. No. 166, Ex. J at 14 ¶ 12.) During the 1996–97 school year, he attended a pre-kindergarten program at Redding Elementary School. On August 5, 1997, a Planning and Placement Team ("PPT") meeting convened to plan for the 1997–98 school year. The Redding Board of Education decided to place Lindsey at the St. Vincent's Special Needs Center ("St.Vincent's") in Trumbull, Connecticut. (Dkt. No. 162 ¶ 42; Dkt. No. 177 ¶ 42.) Pursuant to the IDEA, Plaintiff, Lindsey's guardian, appealed this placement and other aspects of his Individualized Education Plan ("IEP") in Connecticut Department of Education due process hearings. This case concerns four hearing decisions, dated May 5, 1997 (Second Hearing, Case 97–046), August 5, 1997 (First Hearing, Case 97–028), September 5, 1997 (Third Hearing, Case 97–131), and August 7, 1998 (Fourth Hearing, Case 97–231). At the August 7, 1998 hearing, the state hearing officer upheld the Redding Board of Education's decision to place Lindsey in St. Vincent's. Under the stay-put rule, Lindsey remains at Redding Elementary School under his original IEP.

### B. Procedural History

Pursuant to the IDEA, Plaintiff sued the State of Connecticut Department of Education and Theodore S. Sergi as Commissioner of the State of Connecticut Department of Education (collectively, the "State Defendants") and Kenneth Freeston as Superintendent of Schools and the Red-

ding Board of Education (collectively, the "Redding Defendants") in order to appeal these hearing decisions, (Dkt. No. 39.) Plaintiff also asserts claims for injunctive relief and damages under § 504 of the Rehabilitation Act (29 U.S.C. § 794), related state statutes (Conn.Gen.Stat. § 10–76a et seq.), and the due process and equal protection clauses of the federal and Connecticut constitutions.[1] Essentially, Plaintiff contends that Redding Defendants placed Lindsey in St. Vincent's in retaliation for exercising her statutory hearing rights.

Despite the best efforts of Magistrate Judge Joan G. Margolis, multiple written rulings, and the assistance of a Special Master, the parties have not advanced the case since the preliminary injunction hearing, becoming mired in numerous disputes over discovery, scheduling, and the meaning of court orders. This court ruled on December 30, 1999 in part that the "parties shall file cross motions for partial summary judgment on the issue of the hearing appeals under the IDEA.... Until the hearing appeals are resolved, there will be no consideration of [the P]laintiff's retaliation claims." (Dkt. No. 155 at 11.) The arguments were to be limited to the twofold IDEA inquiry, relying primarily on the administrative record. (Id. at 6.)

Plaintiff, as against State Defendants and Redding Defendants, moves for summary judgment. Defendants in turn have so moved. All of the motions are supported by memoranda of law and statements of material fact.[2]

## III. DISCUSSION

### A. Standard of Review

#### 1. The legal standard of summary judgment

Rule 56(c) provides that summary judgment shall be rendered "if the pleadings,

---

1. Plaintiff also refers to 42 U.S.C. § 1983. However, she fails to actually plead this claim currently. (See Dkt. No. 39.) For this reason, a § 1983 claim is not recognized.

2. State Defendants unilaterally failed to comply with Local Rule (9)(c)(1). (Dkt. No. 164 at 2.)

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden to show this. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To defeat summary judgment, the nonmoving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant's burden does not shift when cross motions for summary judgment are before the court; rather, each motion must be judged on its own merits. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 611 (2d Cir.1996).

*2. The standard of review of prior administrative hearings under the IDEA*

■ The IDEA provides that "[a]ny party aggrieved by the findings and decision" made by a state hearing officer "shall have the right to bring a civil action with respect to the complaint presented ... in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) bas[e] its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(B); *see* 34 C.F.R. § 300.512.

The district court must give "due weight" to the findings and decision of the state hearing officer. *See Board of Educ.*

*of Hendrick Hudson Cent. School Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). This deference seeks to ensure that district courts do not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.; see also Mrs. B. v. Milford Bd. of Educ.,* 103 F.3d 1114, 1120 (2d Cir.1997). Federal courts "are expected to give due weight to [administrative decisions], mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir.1998) (internal quotation marks and original alteration omitted); *see also Naugatuck Bd. of Educ. v. Mrs. D.,* 10 F.Supp.2d 170, 177 (D.Conn.1998); *Wall v. Mattituck–Cutchogue Sch. Dist.,* 945 F.Supp. 501, 507 (E.D.N.Y.1996); *Wills v. Ferrandino,* 830 F.Supp. 116, 121 n. 1 (D.Conn.1993).

As to procedural issues, the standard of review is *de novo* "because [they] concern[ ] an issue of law; namely, the proper interpretation of the federal statute and its requirements." *Mrs. B.,* 103 F.3d at 1122. State hearing officers are not more experienced or expert than courts in interpreting federal statutes or the federal constitution as to which deference is not warranted.

Plaintiff's procedural issues regarding the IDEA, other federal and state statutes, and due process issues present questions of law and are reviewed *de novo.* Plaintiff's questions of fact that deal with how and to what extent the IDEA has been applied to the particular factual circumstances, deference and due weight is given to the findings and decisions of the hearing officer.

**B. The Scope of Review Per This Court's Prior Ruling**

"The Act's procedural guarantees are not mere procedural hoops through which Congress wanted state and local educational agencies to jump. Rather, the formality

of the Act's procedures is . . . a safeguard against arbitrary or erroneous decision-making." *Evans v. Board of Educ. of the Rhinebeck Cent. Sch. Dist.,* 930 F.Supp. 83, 93 (S.D.N.Y.1996) (internal quotation marks omitted). Congress placed great importance on the procedural provisions incorporated into the IDEA. *See Rowley,* 458 U.S. at 205, 102 S.Ct. 3034 ("the importance Congress attached to these procedural safeguards cannot be gainsaid"). It is through these procedural safeguards that "Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies and in the formulation of the child's [IEP]." *Id.* at 208, 102 S.Ct. 3034 (internal citation omitted).

The current situation is troubling due to the apparent breakdown in communication between Plaintiff and Redding Defendants. Lindsey's best interests have become obscured by the parties' contentiousness and inability to communicate constructively. Indeed, the legal issues before the court seem to be not so much what is best for Lindsey, but the form and format of discussions between the parties (*e.g.,* Can Plaintiff microphone PPT meetings? Do rules of discovery apply? What are the applicable rules of evidence?). Who is at fault for the breakdown in communication between the parties will not distract the court. Such "he-said/she-said" inquiries are neither constructive nor necessary to advance the interests of Lindsey.

Rather, the inquiry for partial summary judgment laid out in the December 30, 1999 ruling, (Dkt. No. 155 at 6), will be followed. In that ruling, arguments are to be limited to a two-fold inquiry: "[f]irst, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to

receive educational benefits?" (*Id.,* quoting *Rowley,* 458 U.S. at 206–07, 102 S.Ct. 3034 (footnote omitted).)

To the extent that the motions and accompanying documents submitted by the parties conform to this prior ruling, they are considered below. To the extent that the arguments presented do seek to bring forward issues not germane to the two-fold inquiry of *Rowley* and hence are not addressed below, the motions are denied without prejudice. Plaintiff's retaliation claims against either State Defendants or Redding Defendants are not addressed in this ruling.

### C. Plaintiff's Submission of Additional Exhibits in Support of His Motion For Summary Judgment

Plaintiff has recently submitted additional evidence regarding Lindsey's development. (Dkt. No. 184.) The evidence includes Lindsey's report card received August 29, 2000 and a letter from the Willows Pediatric Group dated August 1, 2000. Both submissions are inappropriate and irrelevant to the disposition of issues before this court. Neither deals with matters relevant either at the time of the administrative hearings or at the time Plaintiff's action was filed. before this court. Accordingly, Plaintiff's exhibits have been excluded from consideration and play no role in the disposition of this court's decision.

### D. Plaintiff's 45–day Timeliness Claim

 Plaintiff alleges that "State Defendants violated the [IDEA] and related state law when state practice did not allow timely due process hearing decisions within 45 days from the receipt of a [hearing] request." (Dkt. No. 39 ¶ 45.) [3] State Defendants acknowledge that both federal and state law require a decision within 45

---

**3.** Plaintiff also argues that State Defendants' delay violated federal regulations when they failed to have an IEP in place before the start of the 1997 school year. (Dkt. No. 171 at 18); *see* 34 C.F.R. § 300.342(a). However, Plaintiff fails to plead this cause of action, a violation of federal regulations, in his complaint and so it is not recognized. (*See* Dkt. No. 39.)

days of a hearing request. (Dkt. No. 164 at 3, noting 34 C.F.R. § 300.511(a) and Conn.Gen.Stat. § 10–76h(b)).) Undisputedly, the hearings took longer than 45 days.

State Defendants not only defend the apparent violation of federal and state law but argue that they should be granted judgment as a matter of law on the claim. They argue that since the regulations allow in certain instances for an extension of time, they have acted within the law. State Defendants' argument is unpersuasive.

First, State Defendants do not argue that they actually involved any of the possible extensions of time permitted them under the law. Second, they do not argue nor show that any of the circumstances that might justify an extension of time are present here. (Dkt. No. 164 at 4, citing *Columbia Sch. Dist.*, 24 IDELR 499, No. 95–160 (Or. May 6, 1996) (seasonal holidays, hearing officer availability, regional flooding, and witness availability); *School Admin. Dist. # 25*, 20 IDELR 1316, No. 93–114 (Me. March 24, 1994) (Christmas school vacation and hearing officer scheduling conflicts).) Third, the argument would transform a limited and specified number of exceptions into a broad license to ignore the deadline. Under the argument, it is hard to discern in what circumstances, if ever, State Defendants would be bound by the 45–day deadline. The exceptions would consume the rule.

State Defendants put forward no evidence, except as to hearing 97–231, to justify the hearings' length. (*See* Dkt. No. 171, Exs. D (First Hearing request letter dated 1/31/97, hearing determination dated 8/5/97), E (Second Hearing request letter dated 2/24/97, hearing determination dated 5/5/97), F (Third Hearing request letter dated 5/23/97, hearing determination dated 9/5/97).) The IDEA requires State Defen-

dants to provide timely hearing determinations. An unfounded assertion that they should not be bound by the IDEA requirement does not excuse their unwillingness or inability to comply with the federal mandate. To hold otherwise would render the time limit meaningless.

■ State Defendants note that hearing 97–231 took 32 hearing-days. (*See* Dkt. No. 166, Ex. M at 3 ¶ 2.) They argue that a 45 calendar-day deadline was practically impossible. Indeed, a decision within 45 calendar-days for this particular hearing may have been practically impossible. However, it is does not follow that State Defendants' failure is excusable as there is no showing that the time taken beyond the 45 days was appropriate or reasonable.[4] State Defendants note that these hearings were marked by "dozens of extensions and continuances." (Dkt. No. 164 at 7.) However, the record fails to note who requested these extensions and continuances. As it is not clear that State Defendants were substantially responsible for the long delay, summary judgment is denied as to hearing 97–231.

### E. The PPT requirement of Conn. Gen.Stat. § 10–76h

Connecticut state law requires that "no issue may be raised at [a due process] hearing unless it was raised at a[PPT] meeting for such child or pupil." Conn. Gen.Stat. § 10–76h(a)(1).

#### 1. Alleged preemption by federal law

■ Plaintiff argues that the Connecticut statute has been preempted by federal law, namely, the IDEA. *See* 20 U.S.C. § 1415. Plaintiff's argument is unpersuasive.

There is a presumption against state legislation being found to conflict with an Act of Congress, such as the IDEA. *See*

---

4. State Defendants' decision not to submit a statement of material facts not in dispute precludes, on the record presented, summary judgment as to hearing 97–231. *See* Local Rule 9(c)(1). Indeed, State Defendants' deci-

sion leaves Plaintiff's statement that the actual decision took over a full year to be released uncontroverted. (*See* Dkt. No. 176 at 3.) It also leaves unexplained who was responsible for the delay.

*E.P. Paup Co. v. Director, Office of Workers Compensation Programs,* 999 F.2d 1341, 1348 (9th Cir.1993). Moreover, such a state law is only preempted to the extent it actually conflicts with federal law. *See Dalton v. Little Rock Family Planning Services,* 516 U.S. 474, 476, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996) (per curiam). It should not be lightly presumed that Congress intended that its legislation should supersede state law, *See Lamontagne v. E.I. Du Pont de Nemours and Co., Inc.,* 834 F.Supp. 576, 580–81 (D.Conn.1993), *affirmed* 41 F.3d 846 (2d Cir.1994). Compelling evidence of the intention is required before a federal statute can be found to preempt traditional areas of state law. *See Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union,* 850 F.Supp. 1156, 1161 (S.D.N.Y.), *affirmed* 38 F.3d 626 (2d Cir.1994).

Nothing in the IDEA prohibits a requirement that issues must be first raised at a PPT meeting before they may be raised at a due process hearing. Such a requirement is consistent with, and parallel to, the IDEA requirement that available administrative remedies be exhausted before a special education claim is brought to court. *See* 20 U.S.C. § 1415(i). "Before seeking judicial review in the federal courts, persons claiming to be aggrieved by procedural violations of the IDEA must first exhaust their administrative remedies." *Garro v. Connecticut,* 23 F.3d 734, 737 (2d Cir.1994) (per curiam).

Therefore, the IDEA does not preempt Conn.Gen.Stat. § 10–76h(a)(1). *See E.S. v. Ashford Bd. of Educ.,* Civil No. 3:97cv620, Dkt. No. 64 (D.Conn. August 17, 1998) at 7–9. Accordingly, this state law does not violate federal law.

*2. Alleged violation of the due process clause of the U.S. Constitution*

■ Plaintiff argues that Conn.Gen. Stat. § 10–76h(a)(1) "is unconstitutional on its face and as applied to Lindsey because it interfered with Lindsey's right to due process of law as protected by the United States . . . constitution[ ]." (Dkt. No. 39 ¶ 52.) Plaintiff's claim fails as a matter of law.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks omitted). Plaintiff has not been denied an opportunity to be heard. She was required by state law, to raise the issue first at a PPT meeting prior to raising it before a hearing officer. Administrative processes which are not overly time-consuming or burdensome can further, not obstruct, due process by allowing parties access to a forum and determination in a timely fashion.

Plaintiff argues the requirement that issues first be aired at PPT meeting has in fact been used to deny Plaintiff the opportunity to be heard. (Dkt. No. 176 at 6; Dkt. No. 171 at 33–37.) Plaintiff argues that Redding Defendants refused to allow certain issues to be heard at PPT meetings; hearing officer then allegedly refused to hear Plaintiff's concerns at two subsequent due process hearings. This allegation faults Redding Defendants, not State Defendants. Any claim of denial of due process, as Plaintiff argues, lies against Redding Defendants for failure to fulfill their state law obligations. It does not warrant finding the state statute unconstitutional.

**F. Providing a § 504 Discrimination Hearing**

■ Plaintiff argues that her right to a hearing pursuant to § 504 of the Rehabilitation Act was violated. (*See* Dkt. No. 181; Dkt. No. 171 at 27–33.) An evaluation is required by § 504 before a significant change in placement can be made. (Dkt. No. 171 at 28); *see* 34 C.F.R. § 104.35(a). The procedural safeguards of the IDEA are one means of meeting this requirement. (Dkt. No. 171 at 29); *see* 34 C.F.R. § 104.36. The same hearing system

for § 504 discrimination hearings applies to IDEA hearings. *Komer*, 18 IDELR 230 (U.S. Dep't of Educ., Office of Civil Rights 1991).

When Plaintiff requested due process hearings, clearly noted as pursuant, in part, to § 504, the hearing officers were required to consider matters relevant to a § 504 discrimination hearing. There are few explicit references in the hearing officers' determinations regarding § 504 to suggest that the issues were addressed directly. (*But see* Dkt. No. 171, Ex. G at 12.)

Connecticut has the same system for hearing § 504 and IDEA claims. Plaintiff conclusorily states that "Redding [Defendants] did not perform any evaluation prior to the . . . placement to [St. Vincent's] to show that Lindsey could not benefit from education at [Redding Elementary School,]" (Dkt. No. 171 at 31–32), and that the "[f]ailure to rule on the evaluation requirement under § 504 resulted in significant prejudice to Lindsey," (*Id.* at 32). Evidence of this claim is not found in the hearing determinations cited by Plaintiff. (*See* Dkt. No. 171, Exs. D, E,

F, G, H.) The record reflects thoughtful and reasoned consideration of Lindsey's best interests by the hearing officers. Furthermore, the hearing officers have been instructed by State Defendants to "rule upon . . . alleged procedural or systematic violations of state and federal law regarding the education of children with disabilities, including violations of the Rehabilitation Act, provided that a determination is necessary." (Dkt. No. 181 at 3.) The record reflects no evidence that the hearing officers did anything but this.

This court does not reach the question whether either State Defendants or Redding Defendants are still liable pursuant to § 504 under Plaintiff's retaliation claims.

## G. Due Process Hearing Compliance With the IDEA and With Due Process

█ Plaintiff asserts that State Defendants have implemented a system of due process hearings that fails to comply with the IDEA and related state statutes. Plaintiff asserts a litany of failures on the part of State Defendants.[5] Some of the

---

5. Failure to consolidate assigned hearings involving the same parties within the same year (Dkt. No. 171 at 14); failure to have a policy about hearing officers ruling only on issues before them and not on issues not before them (*Id.* at 14, 23–24); failure to include Plaintiff's written objections to Redding Defendants' request for delays in the administrative record (*Id.* at 14; Dkt. No. 172 at 17); failure to have rules of evidence on evidentiary issues which arise in almost every due process hearing (Dkt. No. 171 at 14, 22), including a lack of rule regarding the acceptable limits of the hearsay evidence (*Id.* at 22), regarding the use of tape recorded PPT meetings as evidence (*Id.* at 22–23, 25), regarding the use of affidavits in evidentiary proceedings and motion practice (*Id.* at 22–23), and regarding the admissibility of a child's educational record; failure to prohibit hearing officers from scheduling numerous partial days (*Id.* at 14–15, 22); failure to enforce a parent's right to call a PPT to raise issues for due process review (*Id.* at 15); failure to assist in enforcing Lindsey's right to a Stay Put in September 1998 (*Id.*); failure to assert proper control of the proceedings (*Id.* at 17); a lack of written rule as to whether a hearing

may be withdrawn with or without prejudice (*Id.* at 17, 19–21); a lack of rule as to whether a hearing officer may bar another hearing officer from hearing other issues (*Id.* at 17, 22); improperly applying the Federal and State Rules of Civil Procedure where they do not apply (*Id.* at 17); finding a breach of the Rules of Professional Conduct without giving an opportunity to have notice of the charge and the opportunity to be heard on the charge (*Id.* at 18); lack of a rule as to whether any discovery of documents is allowed (*Id.*); lack of written rule informing parents of the proper action to take to secure due process review if Redding Defendants refuse to grant a PPT meeting (*Id.* at 21); lack of written rule articulating whether or not Redding Defendants have discretion to deny a PPT meeting under Public Act 95-237 (*Id.*); lack of procedure requiring tape recording of pre-hearing conferences at no cost to parents (*Id.* at 21–22); lack of availability of hearing officers for hearing dates (*Id.* at 22); lack of rule on use of motion practice (*Id.* at 23); and failure to enact *regulations governing* the PPT requirement of Conn.Gen.Stat. § 10-76h(a)(1) (*Id.* at 36–37).

alleged failures of due process manifest Plaintiff's objection to the substance of the hearing officers' decisions, not the underlying procedure.[6] State Defendants do not dispute the lack of formal procedures and rules on certain issues. (Dkt. No. 181 at 3.) Even if this court were to accept as true all of Plaintiff's assertions, the question then turns to whether any of these failures violates the IDEA or due process. Plaintiff argues that these procedural failures caused the hearings to become "lengthy [and] contentious," (Dkt. No. 171 at 25), and that arguments became "wasteful, divisive, and caused delays," (*Id.*). Plaintiff speculates that such delays could be eliminated if State Defendants were to address this issue in a systematic way. (*Id.* at 26.) Plaintiff's argument is without merit.

The federal agency responsible for monitoring IDEA compliance found no fault with State Defendants' procedures. (Dkt. No. 181 at 3.) Whether this evidence alone is sufficient to grant summary judgment, such evidence is highly persuasive. This case is not a proper vehicle for a general review of State procedures.

Due process does not require formal rules of evidence and procedure. Detailed rules of procedure are no panacea against lengthy, contentious, wasteful, divisive, or delay-causing arguments. Indeed, highly formalized systems of legal procedure can be fodder for delay. Due process is not always served by bringing every dispute into a mini-courtroom where only lawyers can navigate the myriad rules. A formalized system could serve to disenfranchise and exclude the very people meant to be served, namely the parents and the educators. "[T]he congressional emphasis [is] upon full participation of concerned parties

throughout the development of the IEP." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034.

At the heart of the IDEA procedure requirements is a joint process to develop an individualized education plan for a disabled child, and, if necessary, to establish a joint process for dispute resolution. Contrary to Plaintiff's assertion, processes that are more informal and flexible to individual needs could better serve the interests of parents and educators, and therefore ultimately, of disabled children. The procedural requirements that Congress laid out in the IDEA need not be expanded. "[T]he legislative conviction [is] that adequate compliance with the *procedures prescribed* would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034 (emphasis added).

State Defendants are not free to fashion any hearing system they wish. Indeed, due process considerations are still very much required. Plaintiff's assertion that due process requires that State Defendants adopt detailed rules of legal procedure for IDEA due process hearings is not warranted and is rejected.

**H. The Comment Provision of CONN. GEN.STAT. § 10–76h(d)(1)**

■ Connecticut law permits a hearing officer to "comment on conduct of the proceedings." CONN.GEN.STAT. § 10–76h(d)(1). There is no equivalent provision in the IDEA. Plaintiff argues that this provision violates the IDEA and due process. (Dkt. No. 171 at 37–50.) Plaintiff's argument is unpersuasive.

Plaintiff addresses the issue in the context of several hearings. The First Hear-

---

**6.** Overruling Redding Defendants' numerous objections and then accusing Plaintiff of improper questions and production requests (Dkt. No. 171 at 18); allowance of hearing officer to issue a finding that Attorney Smith had disrupted and prolonged the hearing without notice or an opportunity to be heard (*Id.* at 22); refusal of hearing officer to rule

on any issue involving the 1996–97 school year pursuant to a ruling of the First Hearing Officer (*Id.*); and allowance of hearing officer to issue a finding that Attorney Smith attempted to subvert the hearing process by using affidavits which had been submitted with a motion (*Id.* at 23).

ing is an example of Plaintiff's argument and illustrates the propriety of the disposition here of all of them. The First Hearing Officer wrote in her determination that "[t]he record here reflects that the Hearing Officer repeatedly overruled Board objections to onerous production requests and improper questions by [Plaintiff's] counsel in order to give him as much latitude as possible to establish proof of the claims made by [Plaintiff]. Nevertheless, the latitude given to [Plaintiff's] counsel served only to take him farther afield and established his inability to link the evidence or testimony to [Plaintiff's] claims." (Dkt. No. 171, Ex. D at 6.) After being given "as much latitude as possible" to present evidence, Plaintiff now not only criticizes the comment that such latitude proved to be unproductive, but argues that the comment constitutes a violation of due process.

Plaintiff sees this as a reprimand "for his reliance on [the hearing officer's] relevancy determinations." (Dkt. No. 171 at 40.) Plaintiff misconstrues such relevancy determinations. Properly, counsel requested the hearing officer to accept his representation as to evidence he would like to present. The hearing officer, who often is unable to evaluate the relevancy of such evidence until it is heard, decides whether or not to accept counsel's representation on the basis of the attendant circumstances. It is gratuitous to argue that when representations of relevancy prove to be unfounded, fault lies with the hearing officer. There is no merit to a claim of error because of reliance on her relevancy determinations and thus a denial of constitutional due process.

## I. The First Hearing

### 1. *The First Hearing Officer's alleged lack of authority to bar other hearing officers from hearing certain issues*

■ At the conclusion of the First Hearing, the hearing officer ruled that Plaintiff was "estopped from litigating, in any forum, any issues arising from any IEP developed prior to August 1, 1997, and/or issues arising from the delivery of services to [Lindsey] by the Board prior to August 1, 1997." (Dkt. No. 172, Ex. P at 6.) Plaintiff argues that this exceeded the power of the hearing officer. (*Id.* at 14–18.) This court agrees.

This court has not been presented with any federal constitutional, state constitutional, federal statutory, state statutory, federal regulatory, or state regulatory authority that one hearing officer has power over another hearing officer. (*See* Dkt. No. 171 at 21.) The powers of hearing officers are presumptively equal to one another, not hierarchical where one hearing officer has more power than another. Their power flows from the State, not from each other. Therefore, the Third Hearing Officer was not bound by an order of the First Hearing Officer.

This having been said, this court agrees with the reasoning of the First Hearing Officer that it was appropriate to recommend that Plaintiff be estopped from litigating those matters in further proceedings so as to not unfairly prejudice Redding Defendants. Her opinion and legal reasoning on this point are well-reasoned. However, in the absence of state regulations dealing with such matters, the Third Hearing Officer was not bound to limit the matters before her in accordance with the First Hearing Officer's recommendation, even if it would be expeditious to do so.

This court makes this decision only in the context of estoppel orders for motions to withdraw. This court expressly limits this decision so not to reach whether final determinations of one hearing officer are binding on another hearing officer.

### 2. *Alleged erroneous findings regarding Attorney Smith without providing him notice of charges and an opportunity to be heard*

Plaintiff argues that the First Hearing Officer made erroneous findings regarding

Attorney Smith without providing him notice of charges and an opportunity to be heard. (Dkt. No. 172 at 18–22.) This court has already dealt with this issue in the context of a statutory and constitutional challenge to CONN.GEN.STAT. § 10–76h(d)(1). Those arguments were rejected above. *See infra,* III.H. Moreover, whether or not the comments were correct is not an issue properly before this court as this is not a cause of action raised in Plaintiff's Fourth Amended Complaint.[7] (*See* Dkt. No. 39.)

### J. The Second Hearing

#### 1. Alleged violation of the IDEA when Plaintiff's request for a PPT meeting was denied

The Second Hearing Officer in hearing 97–046 was presented with the single question, "May the [Redding] Board [of Education] refuse to schedule a[PPT] meeting in response to a request for such a meeting from a Parent?" (Dkt. No. 166, Ex. J at 2.) She held in a thoughtful and reasoned opinion that Redding Defendants should grant any reasonable request to hold a PPT meeting. (Dkt. No. 166, Ex. J at 15.) Plaintiff alleges that this was an error. (Dkt. No. 172 at 22–25.)

▮ The first inquiry is whether as a matter of law Redding Defendants can refuse to schedule a PPT meeting. The Second Hearing Officer considered the issue more fully. Her analysis notes the official commentary of the United States Department of Education regarding the function of the PPT. *See* 34 C.F.R. § 300, Appendix C, Question 11 (1996). To the question, "Who can initiate [PPT] meetings?" the United States Department of Education responded, "[PPT] meetings are initiated and conducted at the discretion of the [Board of Education].... The [Board] should grant any reasonable request for such a meeting." *Id.* Although this court

reviews the question *de novo,* for this and the other reasons in the Second Hearing Officer's determination, it is held that when a request is not reasonable, Redding Defendants can refuse to hold a PPT meeting.

▮ As Plaintiff's counsel has previously recognized (Dkt. No. 166, Ex. J at 13 ¶ 9), the next inquiry is whether in the circumstances, Redding Defendants correctly found that Plaintiff's request for a PPT meeting was not reasonable. (*See also* Dkt. No. 172 at 28.) Due weight is given to the findings of the hearing officer that there were a large number of PPT meetings held in the previous 6 months (Dkt. No. 166, Ex. J at 2 ¶ 3); that all of the issues raised by Plaintiff had previously been discussed and investigated (Dkt. No. 166, Ex. J at 8 ¶ 32); that many of the issues that were offered for discussion did not involve changes to Lindsey's IEP (Dkt. No. 166, Ex. J at 13–14 ¶ 10); and that the two issues that were germane to his IEP were not ripe for discussion at the time the PPT meeting was requested (Dkt. No. 166, Ex. J at 14 ¶ 11). In light of these findings, the Second Hearing Officer concluded that another PPT meeting was not reasonable. Giving due weight to the hearing officer's findings, the agency's decision can not be found to be erroneous.

Plaintiff argues that whether an issue is ripe or not should not be a factor in whether or not to grant a request for a PPT. (Dkt. No. 175 at 26 n. 4.) This argument is without merit. There is little point in bringing together the parents and the educators to discuss an issue, such as medical reports from a rehabilitation physician and a medical report from an eye doctor, that have yet to be released. To the extent that Plaintiff feels that she is disadvantaged by such a rule, she need only wait until the medical reports are actually avail-

---

7. To the extent that Plaintiff looks to ¶¶ 48, 49 of her Fourth Amended Complaint to supply a cause of action, this court finds the allegation there too vague and remote to put State De-

fendants and Redding Defendants on notice that the allegation was rooted in the question of hearing officer comment on attorney conduct.

able to overcome the objection. Plaintiff also disputes whether or not the issues were ripe. Due weight is given to the finding of the hearing officer. Her conclusion, that the issues were not ripe, is supported by the facts presented.

*2. Alleged violation of § 504 when Plaintiff's request for a PPT meeting was denied*

 Plaintiff alleges that Redding Defendants failed to ensure her right to a hearing pursuant to § 504 of the Rehabilitation Act. (Dkt. No. 39 ¶ 47; Dkt. No. 172 at 22–25.) She argues that summary judgment on her § 504 claims are premature because discovery on plaintiff's retaliation claims is not yet complete. (Dkt. No. 175 at 29–30.) The § 504 discrimination claim can be resolved as it relates to the failure of Redding Defendants to grant the request for a PPT. (*See* Dkt. No. 172 at 11 n. 5.)

The purpose of § 504 is to prevent recipients of federal funding from discriminating against individuals on the basis of handicap. *See P.C. v. McLaughlin,* 913 F.2d 1033, 1041 (2d Cir.1990). To survive a motion for summary judgment, Plaintiff must put forward evidence that (1) Plaintiff is a "handicapped person" person under the Rehabilitation Act, (2) Plaintiff is "otherwise qualified" for the program, (3) Plaintiff has been denied the benefits of the program solely because of his handicap, and (4) the relevant program receives federal assistance. *See Mrs. C. v. Wheaton,* 916 F.2d 69, 74 (2d Cir.1990). "The word *solely* provides the key: the discrimination must result from the handicap and the handicap alone." *Johnson v. Thompson,* 971 F.2d 1487, 1493 (10th Cir.1992) (emphasis added) (allegation that children were discriminated against based on both disability and low socioeconomic status was insufficient to state a claim under § 504).

It is not alleged, let alone the subject of evidence, that Lindsey was discriminated against in being denied a PPT meeting on the basis of his handicap. Summary judg-

ment is thus granted against Plaintiff's § 504 discrimination claims in the failure to grant a request for a PPT meeting. Plaintiff's retaliation claims under § 504 and any discrimination claims under § 504 that arise from circumstances other than the failure to hold a PPT meeting are not resolved here.

*3. Alleged violation of CONN.GEN.STAT. § 10–76h(a)(1) when the Plaintiff's request for a PPT meeting was denied*

 Plaintiff claims that Redding Defendants' failure to grant a PPT meeting violated Connecticut state law. (Dkt. No. 172 at 22–25, 28.) CONN.GEN.STAT. § 10–76h(a)(1) is claimed to create a *per se* right. (*Id.;* Dkt. No. 175 at 25.) She points to the language of the statute: "nothing in this subsection shall be construed to limit the right of such parent . . . to initiate a[PPT] meeting at any time." CONN.GEN.STAT. § 10–76h(a)(1).

Rather than creating a right, this language precludes the Connecticut statute from being used to restrict the rights of the parent. It does not affirmatively create the right to initiate a PPT meeting at any time.

It cannot be concluded that either state law or federal law creates a *per se* right in the parent to initiate a PPT meeting at any time. A contrary conclusion would allow PPT meetings to be transformed from the IDEA's goal of a healthy interaction between parents and educators into a weapon in the hands of parents to hold educators and experts hostage to meetings without limit.

*4. Alleged violation of federal due process when Plaintiff's request for a PPT meeting was denied*

 Plaintiff claims that the requirement that issues first be aired at a PPT meeting was used to deny her the opportunity to be heard. (Dkt. No. 176 at 6; Dkt. No. 171 at 33–37.) She alleges that Red-

ding Defendants refused to allow certain issues to be heard at PPT meetings. She then argues that the hearing officers' refusal to allow these issues to be introduced effectively precluded her from being heard on these issues.

Plaintiff's argument misstates the avenues open to her. She can still avail herself of the state hearing system for review as to whether the denial of a request for a PPT meeting was reasonable. Should the hearing officer decide that the request was reasonable, Redding Defendants would be obliged to provide one. Should the hearing officer decide that the request was not reasonable, Plaintiff can then still request this court to review that decision. The avenues of due process are still very much available to her.

Moreover, simply not being heard does not automatically violate due process. The PPT meeting is not an insta-matic forum to allow parents to be heard whenever and about whatever they want; rather, it is a procedural step in the protection of a child's educational rights under the IDEA. The hearing officer found that the issues that Plaintiff wished to air were not pertinent to protecting Lindsey's educational rights under the IDEA. The hearing officer found that many of the issues that were offered for discussion did not involve changes to Lindsey's IEP; and that the two issues that were germane to the IEP were not ripe for discussion at the time the PPT meeting was requested. (Dkt. No. 166, Ex. J at 13–14 ¶¶ 10, 11.)

Giving due weight to the findings of the hearing officer, Plaintiff has not been barred from airing any issue that should have been before a PPT meeting. Accordingly, the failure to grant Plaintiff's request for a PPT meeting, in this instance, was not a violation of Plaintiff's due process rights.

5. *Alleged violation of federal equal protection when Plaintiff's request for a PPT meeting was denied*

■ Plaintiff argues that Redding Defendants denial of her request for a PPT meeting violated her rights under the equal protection clause. (Dkt. No. 175 at 28.) This claim is without merit and summary judgment on this issue is granted to Redding Defendants.

Equal protection means that similarly situated persons must be treated alike. *See Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). As public education has not been identified as a constitutionally guaranteed right subject to strict scrutiny, *see San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), and individuals with disabilities are not considered a suspect class, *see City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (the retarded), the actions of Redding Defendants need only be shown to be rationally related to a legitimate state interest, *see Rodriguez,* 411 U.S. at 40, 93 S.Ct. 1278.

The IDEA ensures the protection of the rights of disabled children requiring special education. *See* 20 U.S.C. § 1400(d)(1)(B). If Redding Defendants' actions were consistent with IDEA procedure, there is no violation of equal protection. *See Scanlon v. San Francisco Unified Sch. Dist.,* 1994 WL 860768 at *11 (N.D.Cal. April 14, 1994).

As discussed above, *see infra,* III.J.1, Redding Defendants' actions, in refusing to grant a PPT, is not found to have violated the IDEA. Plaintiff neither alleges nor asserts evidence of any other way in which Redding Defendants have treated Lindsey differently than similarly situated students. (*See* Dkt. No. 175 at 28.)

6. *Alleged erroneous findings regarding Attorney Smith without providing him notice of charges and an opportunity to be heard*

Plaintiff argues that the Second Hearing Officer made erroneous findings regarding Attorney Smith without providing him no-

tice of charges and an opportunity to be heard. (Dkt. No. 172 at 26–29.) This court has already dealt with this issue. In the context of a statutory and constitutional challenge to Conn.Gen.Stat. § 10–76h(d)(1), those arguments were rejected. *See infra,* III.H. Moreover, whether or not the comments were correct is not an issue properly before this court as this is not a cause of action raised in Plaintiff's Fourth Amended Complaint.[8] (*See* Dkt. No. 39.)

### 7. Jurisdiction to decide on issues of safety

Plaintiff argues that the Second Hearing Officer was wrong as a matter of law when she concluded that safety issues were not within her jurisdiction. (Dkt. 172 at 26; Dkt. No. 175 at 26 n. 4; *see* Dkt. No. 166 at 14 ¶ 10.) To support this argument, Plaintiff offers merely that "[u]nder the IDEA, the subject matter jurisdiction is broad, it incorporates safety issues related to the special education needs of a student." (Dkt. 172 at 26.) Plaintiff assumes as evidence the very conclusion she seeks to assert, namely whether or not safety issues are within the jurisdiction of a hearing officer. She offers no citation or support for her assertion.

### 8. Additional issues

Plaintiff's memorandum of law argues that the Second Hearing was too short. (Dkt. No. 171 at 43.) Her memorandum of law also argues that the Second Hearing Officer's decision not to allow Plaintiff to introduce certain evidence had a chilling effect on zealous advocacy, (*Id.* at 43–45), even though the evidence was irrelevant to the stipulated issues in dispute. Plaintiff's

reply memorandum argues that the Second Hearing Officer erred in not allowing Plaintiff to cross-examine the authors of Redding Defendant documents when she relied on those documents in her decision. (Dkt. No. 175 at 24–25.) Plaintiff has not satisfied the standard of summary judgment as a matter of law with regard to any of these issues.

### K. The Third Hearing

### 1. Refusal to hear issues barred by the First Hearing Officer

Plaintiff argues that the Third Hearing Officer denied Plaintiff due process when she failed to rule on properly raised issues. (Dkt. No. 172 at 29–31.) The hearing officer refused to hear certain issues brought before her, noting that the issues were barred by the estoppel order of the First Hearing Officer.[9] In the absence of state regulation, the Third Hearing Officer was not bound to follow the estoppel order of the First Hearing Officer. *See infra,* III.I.1. However, merely because she was not bound by the estoppel order does not mean that she was obliged to hear the issue. Plaintiff's argument that a hearing officer must hear any issue put forth lest due process be violated, would allow a parent to litigate an issue over and over again in due process hearings with the hearing officer being unable to refuse to hear the issue though it had previously been decided. This court is persuaded by the rationale behind the First Hearing Officer's estoppel order, to avoid unfairly prejudicing Redding Defendants. It was not a violation of due process when the Third Hearing Officer came to the same conclusion.[10]

**8.** To the extent that Plaintiff looks to ¶¶ 48, 49 of her Fourth Amended Complaint to supply a cause of action, this court finds the allegation there too vague and remote to put State Defendants and Redding Defendants on notice that the allegation was rooted in the question of bearing officer comment on attorney conduct.

**9.** The Third Hearing Officer, however, did express some uncertainty as to her own con-

clusion. She left open that "whether or not the [First Hearing O]fficer ... had jurisdiction to make the [estoppel order] that she did, can only be determined by a court of competent appellate jurisdiction, not by this hearing officer." (Dkt. No. 166, Ex. L at 2 ¶ 1.)

**10.** Plaintiff also argues in part on the basis of the Fifth Amendment due process clause. (Dkt. No. 172 at 30; Dkt. No. 175 at 32.) The

### L. The Fourth Hearing

1. *Liability of State Defendants that the hearing officer made an improper placement*

Plaintiff alleges that the "Fourth Hearing Officer violated IDEA, § 504 and state law by making an out of district placement based upon hostility between the parties, without finding that Lindsey could not make progress in any setting less restrictive than St. Vincent's and without finding that FAPE could not be provided in a less restrictive setting. The hearing officer denied Lindsey's right to education in the least restrictive environment." (Dkt. No. 39 ¶ 52.)

This allegation is not clear. To the extent that Plaintiff claims that the Fourth Hearing Officer made an erroneous determination (not "in the least restrictive environment"), this court can provide relief and change the determination. *See* 20 U.S.C. § 1415(i)(2). To the extent that Plaintiff alleges that the hearing officer used an erroneous standard ("hostility . . . without a finding that Lindsey could not make progress in [a] less restrictive [setting] than [St. Vincent's] and without a finding that FAPE could not be provided in a less restrictive setting") in placing Lindsey, this court can also redress imposition of a proper standard. *See id.*

There is no provision in the IDEA for review of the hearing officer's decision by the department of education. The IDEA affords parents and children procedural safeguards to obtain appropriate guarantees of education. "[T]he elaborate and highly specific procedural safeguards embodied in [the statute] are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act." *Rowley,* 458 U.S. at 205, 102 S.Ct. 3034. These procedural safeguards, in part protect and insulate parents and their children, from department of education political machinations.

For these reasons, State Defendants are not liable for the decision, even though erroneous, on the part of an independent, impartial hearing officer. Liability may not flow from decisions over which State Defendants have no control and can not legally influence. With the procedural system in place, parents, local school boards, hearing officers, and this court must ensure that the Lindsey's substantive interests are protected.

Plaintiff's reliance on *Gadsby* and *St. Tammany Parish Sch. Bd.* for the proposition that the State is responsible under the IDEA and hence State Defendants are liable here is misplaced. (Dkt. No. 176 at 7–12); *see St. Tammany Parish Sch. Bd. v. Louisiana,* 142 F.3d 776, 784 (5th Cir. 1998) ("[a state educational agency] may be held responsible if it fails to comply with its duty to assure [sic] that IDEA's substantive requirements are implemented") (first alteration in original), quoting *Gadsby v. Grasmick,* 109 F.3d 940, 952 (4th Cir.1997) (sic in original); *Gadsby,* 109 F.3d at 943–44; (" § 1412(6) places the ultimate responsibility for the provision of a free appropriate public education to each student on the [state education agency]"). In *Gadsby* and in *St. Tammany Parish School Bd.,* the parents of a disabled child sought to enforce in federal court the favorable results of a state hearing review board, the state educational agency in both instances having declined to fund the child's education. *St. Tammany Parish School Bd.,* 142 F.3d at 780–81; *Gadsby,* 109 F.3d at 946–49. In both cases, the state agency was obliged to accept its federal responsibilities under the IDEA and fund the child's education, despite its unilateral wish not to do so. The agency was held bound by the decision of the hearing review board and could not overrule it, set it aside, or unilaterally decide how it otherwise would resolve the matter. So with Lindsey, State Defendants are bound to

---

Fifth Amendment due process clause only applies to the actions of the federal government.

The federal government has not been shown to have violated Plaintiff's due process rights.

comply with the IDEA as determined and applied by the hearing officer. They are not liable for acquiescing in this obligation. This is true not only for actions of the Fourth Hearing Officer but for all the hearing officers.

Lastly, Plaintiff seeks equitable relief against State Defendants to address alleged wrongs committed by the Fourth Hearing Officer. She seeks "increased hearing officer training; enactment of regulations regarding the PPT requirement; consolidation of hearings; interagency agreements . . .; and requiring the State [Defendants] to withhold funds from [the] Redding [Defendants]." (Dkt. No. 176 at 12.) Such relief would not redress any of the wrongs allegedly committed by State Defendants. For example, apart from whether increased hearing officer training is a wise idea or not, such training has nothing to do remedying the wrong alleged, that the "Fourth Hearing Officer violated IDEA, § 504 and state law." (Dkt. No. 39 ¶ 52). Withholding funds from Redding Defendants is wholly unrelated to adjudication of the actions of the Fourth Hearing Officer. It would penalize not State Defendants but either Redding Defendants or, indirectly, Lindsey. The other claimed relief fails for the same reason; they do not remedy the wrong alleged. Any or all of these remedies if granted would leave Lindsey's IEP unchanged and he would be in the same position with the same needs.

Though State Defendants are not liable for alleged error on the part of the Fourth Hearing Officer, that does not preclude this court from reviewing the substantive decision of the hearing officer, giving it due weight and review under a preponderance of the evidence. Since the hearing officer's decision is a form of appellate review of Redding Defendant's determinations at the PPT, any claim of legal error on the part of the hearing officer should procedurally flow against Redding Defendants.

*2. Alleged improper standard of "parental hostility"*

■ Plaintiff argues that the Fourth Hearing Officer used an incorrect standard, namely, hostility between Plaintiff and Redding Defendants. (Dkt. No. 172 at 31–40; *see* Dkt. No. 39 ¶¶ 41, 50). Plaintiff's argument is reviewed giving due weight to the hearing officer's findings of fact and conclusions.

Plaintiff rejects the notion of a "hostile parent" theory on the basis of *Warren G. v. Cumberland County Sch. Dist.,* 190 F.3d 80 (3d Cir.1999). (Dkt. No. 172 at 32.) "The conduct of parents should not be permitted to defeat the purpose of the Act," and "[v]igorous advocacy is an anticipated by-product of a policy encouraging parental involvement." *Warren G.,* 190 F.3d at 86. Redding Defendants argue that *Warren G.* is distinguishable because the issue there was not the placement of the child but rather the amount of reimbursement owed the parent by the state. Furthermore, they argue, the parent hostility in *Warren G.* was the result of due process advocacy by the parents whereas here the parent hostility here is due to a parent who is "obstructionist in the extreme." (Dkt. No. 174 at 15.) *Warren G.* is found to be persuasive. The question of whether Plaintiff is hostile or not is not here decided or considered.

*Warren G.* concerned the amount of reimbursement owed a parent by the state, the language and rationale of the opinion and correctly upheld the right of parents to advocate vigorously on behalf of their children.

The only significant interactions between a school board and a parent ought to be about the interests of the disabled child. It will be arbitrary for a court to attribute some contentiousness to vigorous advocacy and other contentiousness to an "obstructionist" parent. A contrary holding could "undermine th[e] policy [goals of the IDEA] by placing parents at risk that

their advocacy may be found extreme." *Warren G.*, 190 F.3d at 86.

Redding Defendants also cite *Board of Educ. of Community Consol. Sch. Dist. No. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712 (7th Cir.1991), for the proposition that hostility between the parent and the local education board could be considered as a factor in whether to grant an out of district placement. *See also Greenbush Sch. Comm. v. Mr. and Mrs. K.*, 949 F.Supp. 934 (D.Me.1996) (holding that parental hostility is an appropriate factor to be considered in making a placement decision). *Board of Educ. of Community Consol. School Dist. No. 21* is distinguishable as there it was the parent who sought the out of district placement. As such, advocacy rights were not fettered but furthered by the consideration of hostility.

It is unfortunate that some of the Redding staff have left or have threatened to leave as a result of Plaintiff's alleged hostility. However, the IDEA was passed for the purpose of protecting disabled children, not the jobs of school employees. Though the risk of staff leaving is regrettable, this factor can not detract from pursuit of the purpose of a congressional statute that seeks to help disabled children by creating a system of rights for their parents, even hostile parents, to advocate on their behalf.

■ The next inquiry is whether in the absence of this factor, the Fourth Hearing Officer's analysis justifies his selection of St. Vincent's as the least restrictive placement for Lindsey. Deference to the determination of the hearing officer ensures that district courts do not "substitute their own notions of sound educational policy for those of the school authorities which they review," *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034, and "give due weight to [administrative decisions], mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," *Walczak*, 142 F.3d at 129 (inter-

nal quotation marks and original alteration omitted).

This is the summary of facts and analysis, in the absence of any reference to "parent hostility." Lindsey's teacher, Ms. Laglois, visited St. Vincent's and "observed that it contained all of the components which [Plaintiff] had been requesting for Lindsey." (Dkt. No. 172, Ex. G at 5 ¶ 18.) Plaintiff believed Lindsey "did not receive an appropriate education program while at [Redding Elementary School]" though this is disputed by the Redding educational staff. (*Id.* at 5 ¶ 27.) The hearing officer visited St. Vincent's and made the following ten personal observations.

1) "St. Vincent's . . . can provide several important special education support services which can not be provided by the [Redding Defendants].

2) "St. Vincent's . . . offers [Lindsey] a classroom with a maximum of six students staffed by a full time certified special education teacher and a full time teacher asst.

3) "St. Vincent's . . . has a large indoor recreational area fully equipped including a therapeutic whirlpool and [is] completely handicap accessible.

4) "St. Vincent's . . . can provide for all of [Lindsey's occupational therapy, physical therapy,] and Speech Language needs with full time on site staff.

5) Safety cushioned floors in classrooms and in outdoor recreation areas offer an added safety feature for [Lindsey] at . . . St. Vincent's. . . .

6) "St. Vincent's . . . has a 4/5 time audiologist, an assistive technology area and an augmentative communication area for [Lindsey's] added benefit.

7) "A Family Center area at St. Vincent's . . . offers the [Plaintiff] an ongoing opportunity to interact with other parents[,] and an open door policy at St. Vincent's . . . offers the [Plaintiff] full access to observe [Lindsey] at her con-

venience. The Family Center is staffed by a family support assistant.

8) "At ... St. Vincent's ... an adaptive toy library offers, on loan, free of charge, numerous handicapped adapted toys, equipment, and audio-visual material for the [Plaintiff] and [Lindsey] to utilize.

9) "St. Vincent's ... medical dept. is staffed by two full time RNs, two full time LPNs and a .1 Medical Director and .05 pediatric orthopedic surgeon and .05 pediatric neurologist.

10) "Staff at St Vincent's ... are employed 12 months per year to avoid any interruption of services to [Lindsey] with no changes in any of his service providers."

*Id.* at 8 ¶¶ 1–10. The hearing officer referenced the case of *Lachman v. Illinois State Bd. of Educ.,* 852 F.2d 290 (7th Cir. 1988), for the proposition that the "school district may select the instructional methodology to be used with a student[,] mainstreaming preference of the statute is not absolute, [and] educational program must be appropriate to child's needs." *Id.* at 10. The hearing officer went on to comment that "[f]or *reasons* herein stated it is my opinion that [St. Vincent's] is most appropriate in meeting [Lindsey's] needs." *Id.* (emphasis on plurality added). The Redding Elementary School "would be an appropriate program." *Id.* St. Vincent's "is a highly specialized and highly appropriate program for [Lindsey]." *Id.* at 11. "[St. Vincent's] has ... the services which [Lindsey] requires." *Id.* "The [Plaintiff] is not acting in [Lindsey's] best interest." *Id.* "In light of [omitted factor] and the extensiveness of the offerings at [St. Vincent's, St. Vincent's] represents an appropriate program for [Lindsey]. *Id.* at 12."

"Can the child reasonably be expected to receive educational benefits, as indicated in his IEP, in a regular education setting? In [Lindsey's] case, No! Is the placement in a regular education setting likely to have an adverse effect [sic] on the child? In [Lindsey's] case, Yes! Is the child's placement in a regular education setting likely to adversely effect [sic] the educational opportunities of other students? In [Lindsey's] case, Yes! In this instance all three criteria preclude consideration of placing L. in the [Redding Elementary School]."

*Id.* at 12–13. "The facts present in this case mandate a strong stand be taken based on fairness, logic, and to some extent legal precedent ordering that [Lindsey] be placed at [St. Vincent's]." *Id.* at 13.

"It is my strong belief that [St. Vincent's] is in fact the [least restrictive environment] for [Lindsey] .... There is a preponderance of evidence in the record and this hearing officer has personally observed and described earlier in this decision the unique and appropriate features which clearly delineate why [St. Vincent's] is the [least restrictive environment] for [Lindsey]."

*Id.* "It is my opinion that facts present in this instance clearly call for placement of [Lindsey] in a setting specifically designed to provide for his disabilities which are so severe that he will receive little or no benefit from inclusion." *Id.*

The above facts and the analysis of the hearing officer's are given due weight. In the opinion of this court, they are sufficient to manifest, by a preponderance of the evidence, that in the absence of any "hostile parent" factor, St. Vincent's is the "least restrictive environment" for Lindsey.

### 3. Alleged consideration of issues not before the hearing officer

Plaintiff asserts that the "Fourth Hearing officer issued a ruling for the placement of Lindsey for the 1998–99 school year." (Dkt. No. 176 at 16.) Six issues were identified for the hearing officer's consideration on September 19, 1997. (Dkt. No. 176, Ex. G at 2.) The fourth of these six was whether or not St. Vincent's was "the least restrictive environment for

[Lindsey] for the 1997–98 school year." (*Id.*)

Plaintiff requested the due process hearing on May 23, 1997. The hearing officer released his determination on August 7, 1998, over one year later. (*Id.* at 1.) By the time the determination was released, the issue of the 1997–98 school year had become moot, although the issue of the 1998–99 school year had become ripe. The determination, that St. Vincent's was the least restrictive environment for Lindsey for 1997–98, was held to be the same for 1998–99.

Technically, this was not the precise issue before the hearing officer. Nonetheless, a due process violation is not found. If the decision to consider both years at the same time had been rendered fifteen months earlier, the record does not suggest that the evidence and arguments would not have been the same. Plaintiff does not assert that the determination would have been different, merely speculating that "[i]t is by no means clear that the appropriate placement for Lindsey for 1997–98 would be the identical to a placement for 1998–99." (Dkt. No. 176 at 16.) Plaintiff has not been disadvantaged by the hearing officer's determination nor been denied an opportunity to be heard if there was evidence of a difference as to the year 1998–99. No such evidence is cited. Given the late hearing determination release, Plaintiff and Lindsey would have been disadvantaged by having to repeat the hearing with identical evidence and arguments to only arrive at the same conclusion. For these reasons, a due process violation is not found.

### 4. Alleged erroneous findings regarding Attorney Smith that interfered with Plaintiff's right to representation under the IDEA

Plaintiff argues that the Fourth Hearing Officer erred regarding Attorney Smith that interfered with Plaintiff's right to representation under the IDEA. (Dkt. No. 171 at 46–50); *see* 20 U.S.C. § 1415(h)(1). This issue was decided in the context of a statutory and constitutional challenge to CONN.GEN.STAT. § 10–76h(d)(1), and the arguments were rejected above. *See infra,* III.H. Moreover, whether or not the comments were correct is not an issue properly before this court as this is not a cause of action raised in Plaintiff's Fourth Amended Complaint.[11] (*See* Dkt. No. 39.)

### 5. The Use of Tape Recording During PPT Meetings

■ The Fifth Hearing was consolidated with the Fourth Hearing and considered as part of that record. The Fifth Hearing was to adjudicate how Plaintiff could tape record PPT meetings. Both parties agree that Plaintiff is allowed to tape record PPT meetings. The manner in which Plaintiff can tape PPT meetings is not a cause of action raised in Plaintiff's Fourth Amended Complaint. (*See* Dkt. No. 39.)

### M. Plaintiff's Claims in Her Fourth Amended Complaint

#### 1. Paragraph 45 against State Defendants

State Defendants are denied summary judgment on this claim. *See infra,* III.D. Plaintiff is entitled to summary judgment, except as to hearing 97–231, on the claim that State Defendants violated the IDEA and CONN.GEN.STAT. § 10–76h(b). *See id.*

#### 2. Paragraph 46 against State Defendants

State Defendants are entitled to summary judgment on this claim. *See infra,* III.E.1. Plaintiff is denied summary judgment on this claim. *See id.*

---

11. To the extent that Plaintiff looks to ¶¶ 48, 49 of her Fourth Amended Complaint to supply a cause of action, this court finds the allegation there too vague and remote to put State Defendants and Redding Defendants on notice that the allegation was rooted in the question of hearing officer comment on attorney conduct.

### 3. Paragraph 47 against Redding Defendants

Redding Defendants are entitled to summary judgment that the failure to grant Plaintiff's request for a PPT, in this instance, did not violate the IDEA, § 504 of the Rehabilitation Act, CONN.GEN.STAT. § 10–76h(a)(1), the due process clause of the U.S. constitution, or the equal protection clause of the U.S. constitution. *See infra*, III.J.1; *infra*, III.J.2; *infra*, III.J.3; *infra*, III.J.4, *infra*, III.J.5. Plaintiff is denied summary judgment on this claim. *See id.*

### 4. Paragraph 48 against State Defendants

State Defendants are entitled to summary judgment on this claim. *See infra*, III.L.1. Plaintiff is denied summary judgment on this claim. *See id.*

### 5. Paragraph 48 against Redding Defendants

Redding Defendants are entitled to summary judgment on this claim. *See infra*, III.I.1; *infra*, III.I.2; *infra*, III.J.6; *infra*, III.J.7; *infra;* III.K.1; *infra*, III.L.3; *infra*, III.L.4. Plaintiff is denied summary judgment on this claim. *See id.*

### 6. Paragraph 49 against State Defendants

Plaintiff alleges that State "Defendants violated [P]laintiff's fundamental procedural due process rights as secured by the United States and Connecticut Constitutions, IDEA, § 504, and related state law in the conduct of the due process hearings." (Dkt. No. 39 ¶ 49.) Plaintiff seeks to distinguish this claim from her other allegations. She argues that while this is also founded on due process, the prior claims dealt with notions of timeliness and the Connecticut PPT requirement. (Dkt. No. 176 at 17.) Her memorandum of law (Dkt. No. 176) defines and distinguishes her claim (Dkt. No. 171 at 27–33, 37–50). There it is argued that her due process rights were violated when she was not provided a hearing pursuant to § 504 when comments were made in the hearing determinations regarding the conduct of her attorney.

State Defendants have satisfied the standard of summary judgment that Plaintiff's federal due process rights have not been violated. *See infra*, III.F; *infra*, III.H. Plaintiff is denied summary judgment on this claim. *See id.*

### 7. Paragraph 49 against Redding Defendants

For the same reasons as above, *see infra*, III.M.6, Redding Defendants have satisfied the standard of summary judgment that Plaintiff's federal due process rights have not been violated, *see infra*, III.F; *infra*, III.H. Plaintiff is denied summary judgment on this claim. *See id.*

### 8. Paragraph 50 against State Defendants

State Defendants are entitled to summary judgment on this claim. *See infra*, III.L.1. Plaintiff is denied summary judgment on this claim. *See id.*

### 9. Paragraph 50 against Redding Defendants

Redding Defendants are entitled to summary judgment regarding the Fourth Hearing Officer's improper out of district placement of Lindsey arising out of alleged hostility between the parties. *See infra*, III.L.2. Plaintiff is denied summary judgment on this claim. *See id.*

### 10. Paragraph 51 against Redding Defendants

This ruling does not address or dispose of this claim. *See infra*, III.B.

### 11. Paragraph 52 against State Defendants

State Defendants are entitled to summary judgment that CONN.GEN.STAT. § 10–76h(a)(1) is not unconstitutional pursuant

to the due process clause of the U.S. Constitution. *See infra,* III.E.2. Plaintiff is denied summary judgment on this claim. *See id.*

### 12. *Paragraph 52 against Redding Defendants*

Redding Defendants are entitled to summary judgment that CONN.GEN.STAT. § 10–76h(a)(1) is not unconstitutional pursuant to the due process clause of the U.S. Constitution. *See infra,* III.E.2. Plaintiff is denied summary judgment on this claim. *See id.*

## IV. CONCLUSION

State Defendants' motion for summary judgment (Dkt. No. 163) is **granted in part** and **denied in part,** to the extent outlined in this ruling above.

Plaintiff's motion for summary judgment against State Defendants (Dkt. No. 169) is **granted in part** and **denied in part,** to the extent outlined in this ruling above.

Redding Defendants' motion for partial summary judgment (Dkt. No. 161) is **granted in part** and **denied in part,** to the extent outlined in this ruling above.

Plaintiff's motion for partial summary judgment against Redding Defendants (Dkt. No. 158) is **granted in part** and **denied in part,** to the extent outlined in this ruling above.

SO ORDERED.