Ingabritt **LILLBASK**, as legal guardian on behalf of Lindsey **MAUCLAIRE**, Plaintiff–Appellant,

v.

**STATE OF CONNECTICUT DEPARTMENT OF EDUCATION**, Theodore S. Sergi, Commissioner, Connecticut State Board of Education, Mary Gelfman, Hearing Officer, Kenneth Freeston, Superintendent of Redding Schools, and Redding Board of Education, Defendants–Appellees.

No. 03–7274.

United States Court of Appeals, Second Circuit.

Argued: Oct. 28, 2003.

Decided: Feb. 2, 2005.

Winona W. Zimberlin, Hartford, Connecticut, for Plaintiff–Appellant.

Nyle K. Davey, Assistant Attorney General, for Richard Blumenthal, Attorney

General for the State of Connecticut, Hartford, Connecticut, for Defendants–Appellees State of Connecticut Department of Education, Theodore Sergi, Connecticut State Board of Education, and Mary Gelfman.

Richard J. Buturla, Bercham, Moses & Devlin, P.C., Milford, Connecticut, for Defendants–Appellees Kenneth Freeston and Redding Board of Education.

Kelly D. Balser, Senior Staff Attorney (Patrice A. McCarthy, General Counsel, on the brief), Connecticut Association of Boards of Education, Wethersfield, Connecticut; Julie Underwood, General Counsel, and Naomi Gittins, Senior Staff Attorney, National School Boards Association, Alexandria, Virginia, for amici curiae Connecticut Association of Boards of Education and National School Boards Association.

Ralph F. Boyd, Jr., Assistant Attorney General (Mark L. Gross and Karl N. Gellert, Attorneys, on the brief), Civil Rights Division, Department of Justice, Washington, D.C.; Brian Jones, General Counsel, and Kala Shah Surprenant, Attorney, Office of General Counsel, United States Department of Education, Washington, D.C., for amici curiae United States and United States Department of Education.

Before: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Plaintiff-appellant, Ingabritt Lillbask, the legal guardian of Lindsey Mauclaire, a disabled child, sued defendants-appellees, the Connecticut Department of Education, Commissioner Theodore S. Sergi, the Connecticut Board of Education, Hearing Officer Mary Gelfman, the Redding Board of Education, and Redding School Superintendent Kenneth Freeston (hereinafter "defendants"), for violations of both the United States and Connecticut Constitutions as well as various federal and state statutes, notably the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1490 (2000) [1]; the Rehabilitation Act, 29 U.S.C. §§ 701–7961 (2000); and Connecticut's special education law, Conn. Gen.Stat. §§ 10–76a–10–76gg (2003). Lillbask now appeals from a final judgment entered in defendants' favor on February 13, 2003, in the District of Connecticut (Peter C. Dorsey, *Judge*). The judgment followed a bench trial, after which the district court issued a detailed unpublished Memorandum of Decision concluding that plaintiff had failed to carry her burden on the claim of retaliation in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794. The district court had previously issued two published decisions resolving cross-motions for summary judgment on all other claims in favor of defendants. *See Lillbask v. Sergi*, 193 F.Supp.2d 503 (D.Conn.2002); *Lillbask v. Sergi*, 117 F.Supp.2d 182 (D.Conn.2000).

On this appeal, Lillbask challenges certain rulings made by the district court on summary judgment. Specifically, she faults the court for (1) rejecting as a matter of law her IDEA challenge to defendants' proposal to place Lindsey in a private special education facility for the 1997–1998 school year,[2] (2) holding that Conn.

---

**1.** Recently, the IDEA has been generally amended by the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub.L. No. 108–446, 118 Stat. 2647 (Dec. 3, 2004), which takes effect on July 1, 2005. *See id.* § 302(a). Since all of the relevant events occurred and this appeal has con-

cluded prior to IDEIA's effective date, we rely on the statutory provisions as found in IDEA. Accordingly, the statutory citations herein refer to IDEA, as codified prior to IDEIA's passage.

**2.** Lillbask asserts a related procedural error by the district court in reaching this conclu-

Gen.Stat. § 10–76h(a)(1) was neither in-consistent with nor preempted by IDEA, and (3) rejecting as a matter of law her procedural challenges to administrative proceedings relating to Lindsey's place-ment. Defendants counter that Lillbask's first and second points are moot and that her third lacks merit. We agree with de-fendants that Lillbask's challenges to (1) the proposed 1997–1998 placement for Lindsey and (2) the application of Conn. Gen.Stat. § 10–76h(a)(1) no longer present live controversies. With respect to her challenges to administrative proceedings before individual hearing officers, we af-firm the district court's judgment with re-spect to the proceedings before the third hearing officer, but we reverse with re-spect to the proceedings before the second hearing officer, defendant Gelfman.

### Background

#### I. Statutory Framework

Because the facts relevant to this appeal involve decisions made pursuant to IDEA, we begin with a brief overview of that statute. We have previously characterized the IDEA as part of " 'an ambitious feder-al effort to promote the education of handi-capped children.' " Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir.1998) (quoting Board of Educ. v. Row-ley, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (discussing predecessor statutes, the Education of the Handi-capped Act ("EHA"), 91 Pub.L. No. 230, 84 Stat. 175 (1970), and the Education for All Handicapped Children Act of 1975, Pub.L. No. 94–142, 89 Stat. 773 (1975), which were subsequently amended and renamed IDEA, Pub.L. No. 102–119, § 1, 105 Stat. 587, 587 (1991))). Pursuant to IDEA, Con-gress "offers federal funds to states that demonstrate, inter alia, that they have de-veloped plans to assure 'all children with disabilities residing in the state' a 'free appropriate public education.' " Mackey v. Board of Educ., 386 F.3d 158, 159–60 (2d Cir.2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). The statute is not neu-tral in its view of what generally consti-tutes an appropriate public education for children with disabilities. Rather, IDEA "expresses a strong preference" for dis-abled children "to be educated, 'to the maximum extent appropriate,' together with their non-disabled peers" and, accord-ingly, requires "special education and re-lated services [to] be provided in the least restrictive setting consistent with a child's needs." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d at 122 (quoting 20 U.S.C. § 1412(a)(5)(A)).

"The 'centerpiece' of the IDEA's edu-cation delivery system is the 'individual-ized education program,' or 'IEP.' " Mur-phy v. Arlington Cent. Sch. Dist. Board of Educ., 297 F.3d 195, 197 (2d Cir.2002) (quoting Honig v. Doe, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)); see 20 U.S.C. § 1414(d) (defining and describ-ing the development, review, and revision of an IEP). "The IEP, the result of col-laborations between parents, educators, and representatives of the school district, 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.' " Id. (quoting Honig v. Doe, 484 U.S. at 311, 108 S.Ct. 592).

"IDEA also provides a variety of 'proce-dural safeguards with respect to the provi-

sion without consideration of Lindsey's prog-ress at the Redding public schools during the pendency of this litigation. See 20 U.S.C. § 1415(i)(2)(B)(ii) (indicating that, in a civil action under IDEA, the court "shall hear ad-ditional evidence at the request of a party").

sion of free appropriate public education' by school districts." *Mackey v. Board of Educ.*, 386 F.3d at 160 (quoting 20 U.S.C. § 1415(a)); *see also Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d at 122–23 (describing procedural safeguards). Most relevant for our purposes, IDEA requires states to provide a disabled child's parent or guardian with "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). In response to such a complaint, a state or local hearing officer must conduct an "impartial due process hearing" and render a decision. *Id.* § 1415(f). A parent or guardian dissatisfied with that decision may appeal to the "State educational agency," which in turn must conduct "an impartial review." *Id.* § 1415(g).

■■■ Although "[t]he responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d at 129, "[t]heir rulings are ... subject to 'independent' judicial review," *id.* (quoting *Board of Educ. v. Rowley*, 458 U.S. at 205, 102 S.Ct. 3034); *see* 20 U.S.C. § 1415(i)(2)(A) (providing that "any party aggrieved by the findings and decision" of the administrative review officers "shall have the right to bring a civil action" in state or federal court). In conducting judicial review, federal courts are "expected to give 'due weight' to [the administrative] proceedings, mindful that the judiciary generally 'lack[s] the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." ' " *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d at 129 (quoting *Board of Educ. v. Rowley*, 458

U.S. at 206, 208, 102 S.Ct. 3034 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973))). But, "the 'due weight' we ordinarily must give to the state administrative proceedings is not implicated with respect to ... issue[s] of law," such as "the proper interpretation of the federal statute and its requirements." *Mrs. B. v. Milford Board of Educ.*, 103 F.3d 1114, 1122 (2d Cir.1997). As the district court properly observed in this case, "[s]tate hearing officers are not more experienced or expert than courts in interpreting federal statutes or the federal constitution," and, therefore, "deference is not warranted." *Lillbask v. Sergi*, 117 F.Supp.2d at 187.

Significantly, IDEA contains a "stay put" provision requiring that, "during the pendency of any proceedings [regarding a parent's or guardian's complaints about an IEP], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j); *see also Mackey v. Board of Educ.*, 386 F.3d at 163 (discussing "stay put" provision).

## II. *Factual Background to the Instant Suit*

Lindsey Mauclaire is an adolescent boy who, as the result of a near-drowning incident during the first year of his life, cannot walk and suffers various visual, mental, and neurological impairments. Under IDEA, Lindsey is eligible to receive special education from the public school district in Redding, Connecticut, where he resides with his guardian, Ingabritt Lillbask, and his siblings. During the 1996–1997 school year, Lindsey was educated in a mainstream pre-kindergarten program at Redding Elementary School. The following summer, on August 5, 1997, a Plan-

ning and Placement Team ("PPT") met to develop Lindsey's IEP for the upcoming 1997–1998 school year. Over Lillbask's objections, the PPT decided that Lindsey should be moved from the Redding public schools to St. Vincent's Special Needs Center ("St. Vincent's"), a private special education program in Trumbull, Connecticut.

Lillbask challenged the 1997–1998 IEP, objecting chiefly to its private placement proposal. During 1997 and 1998, four due process hearings relating to Lindsey's challenged IEP were conducted before four different state hearing officers, yielding decisions on various issues. *See* Case 97–028 (decision rendered Aug. 5, 1997; hereinafter "first hearing"); Case 97–046 (decision rendered May 5, 1997; hereinafter "second hearing"); Case 97–131 (decision rendered Sept. 5, 1997; hereinafter "third hearing"); and Case 97–231 (decision rendered Aug. 7, 1998; hereinafter "fourth hearing"). Throughout these proceedings, Lindsey always remained in the Redding public schools pursuant to IDEA's stay-put provision. Following the fourth hearing, which spanned thirty-two hearing days and concluded after the 1997–1998 school year had ended, the hearing officer approved the 1997–1998 IEP, finding that St. Vincent's was the "least restrictive environment" in which Lindsey could have received a free appropriate public education during that school year.

After exhausting IDEA's administrative procedures for challenging this hearing decision, Lillbask filed the instant federal action. Relying on IDEA's stay-put provision, the district court entered a preliminary injunction requiring defendants to continue Lindsey's education in the Redding public schools. *See* Hr'g Tr., Oct. 5, 1998, at 83. Under an agreement between the parties, Lindsey has, in fact, advanced from grade to grade with his peers in the Redding public schools. On March 30, 2002, almost five years after Lillbask commenced this litigation, the district court entered partial summary judgment for defendants and lifted the stay-put order. *See Lillbask v. Sergi,* 193 F.Supp.2d at 519. Nevertheless, Lindsey has remained in the Redding public schools, and defendants presently acknowledge that this is an appropriate placement. *See* Br. for Redding Appellees, at 16 (representing that, "[a]t this point, Redding does not intend to place Lindsey out of district"); Supp. Br. for Redding Appellees, at 3 (noting that "Lindsey has flourished educationally" in the Redding public schools and "continues to be successful in his program").

### Discussion

#### I. Standard of Review

 Per our usual practice regarding summary judgment awards in IDEA cases, we review the district court's rulings de novo. *See Mackey v. Board of Educ.,* 386 F.3d at 163; *M.S. v. Board of Educ.,* 231 F.3d 96, 102 (2d Cir.2000).[3]

---

**3.** As courts in this circuit have observed, a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a "pragmatic procedural mechanism" for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits. *Warton v. New Fairfield Board of Educ.,* 217 F.Supp.2d 261, 270 (D.Conn.2002); *see Wall v. Mattituck–Cutchogue Sch. Dist.,* 945 F.Supp. 501, 508 & n. 6 (E.D.N.Y.1996) (analogizing the role Rule 56 motions play in allowing courts to review administrative determinations in IDEA cases to the role Rule 12(c) motions play in allowing administrative review of Social Security determinations); *see also Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 892 (9th

## II. *Mootness*

■ Defendants submit that certain of Lillbask's claims should be dismissed as moot. A party seeking to have a case dismissed as moot bears a heavy burden. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir.1992). There is no question that "Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). As we have observed, "the 'case or controversy' requirement has itself been a fertile ground for controversy through the years." *Russman v. Board of Educ.*, 260 F.3d 114, 118 (2d Cir.2001). Nevertheless, "at its uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* When the issues in dispute between the parties "are no longer 'live,'" a case becomes moot, *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and "the court—whether trial, appellate, or Supreme—loses jurisdiction over the suit, which therefore must be dismissed," *Russman v. Board of Educ.*, 260 F.3d at 118–19.

Applying these principles to this case, we conclude that Lillbask's challenges to (1) the 1997–1998 IEP, which proposed removing Lindsey from the Redding public schools and placing him in a private special education facility, and (2) the application of Conn. Gen.Stat. § 10–76h(a)(1) to IDEA due process hearings no longer present live disputes and must, therefore, be dismissed as moot.

### A. *The 1997–1998 IEP*

1. *Lillbask's Challenge to the 1997–1998 Private Placement Proposal Is Rendered Moot by Defendants' Maintenance of Lindsey in the Redding Public Schools and Their Acknowledgment that Redding Is His Present Appropriate Placement*

■ Lillbask asserts that defendants violated IDEA, § 504 of the Rehabilitation Act, and Conn. Gen.Stat. § 10–76d(d) (prohibiting changing a child's educational placement without parent's or guardian's consent) in formulating the 1997–1998 IEP, which proposed removing Lindsey from the Redding public schools and placing him at St. Vincent's. Defendants submit that Lillbask's challenges to the 1997–1998 IEP placement are moot because, during the pendency of this action, Lindsey has never been transferred from the Redding public schools to St. Vincent's; rather, he has remained in the Redding public schools and has been allowed to progress from grade to grade with his nondisabled peers. Moreover, defendants now acknowledge that the Redding public schools represent an appropriate placement for Lindsey. *See* Br. for Redding Appellees, at 16; Supp. Br. for Redding Appellees, at 3. Lillbask argues that defendants' voluntary cessation of their efforts to place Lindsey outside the Redding public schools does not moot her claims because the challenged conduct is capable of repetition while evading review.

■ The Supreme Court has "recognized an exception to the general rule [regarding mootness dismissals] in cases that

Cir.1995) ("Though the parties [in an IDEA action] may call the procedure 'a motion for summary judgment' ..., the procedure is in substance an appeal from an administrative determination, not a summary judgment.").

are capable of repetition, yet evading review." *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam) (internal quotation marks omitted). The exception, however, " 'applies only in exceptional situations,' " *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), where two circumstances are " 'simultaneously present: " '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again,' " ' " *id.* (brackets in original) (quoting *Lewis v. Cont'l·Bank Corp.,* 494 U.S. 472, 481, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (quoting *Murphy v. Hunt,* 455 U.S. at 482, 102 S.Ct. 1181 (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam)))). Lillbask's case does not satisfy these two factors.

### a. *The Amount of Time Available for Review*

In *Board of Education v. Rowley,* a case arising under IDEA's predecessor statute, the EHA, *see supra* at 81, the Supreme Court recognized that judicial review of IEP challenges "invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings." 458 U.S. at 186 n. 9, 102 S.Ct. 3034. Accordingly, it upheld a district court's decision to retain jurisdiction "because the alleged deficiencies in the IEP were capable of repetition as to the parties before it yet evading review." *Id.*

This reasoning has prompted a number of circuits to conclude that IEP disputes likely satisfy the first factor for avoiding mootness dismissals. *See, e.g., Rome Sch. Comm. v. Mrs. B.,* 247 F.3d 29, 31 (1st Cir.2001) (noting that controversies regarding an IEP "are likely to evade review because the 'administrative and judicial review of an IEP is "ponderous" and usually will not be complete until a year after the IEP has expired' " (quoting *Daniel R.R. v. State Board of Educ.,* 874 F.2d 1036, 1041 (5th Cir.1989) (quoting *School Comm. v. Dep't of Educ.,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)))); *Sacramento City Unified Sch. Dist., Board of Educ. v. Rachel H.,* 14 F.3d 1398, 1403 (9th Cir. 1994) (noting that "mainstreaming" conflict was "likely to evade review since the nine-month school year will not provide enough time for judicial review").

This court, in *Christopher P. v. Marcus,* 915 F.2d 794, 803 (2d Cir.1990), suggested that the age of the disabled child might be relevant to application of the first mootness factor. For example, in the case of a child approaching the conclusion of his eligibility for special education services, *see, e.g., Honig v. Doe,* 484 U.S. at 322–23, 108 S.Ct. 592 (involving disabled child who was already twenty-one years old at time of Supreme Court review), the prospect of a claim evading review would be more likely than for an adolescent child, who had many years of eligibility remaining, and who could thus "file suit in the district court immediately" upon any repeat violations, *Christopher P. v. Marcus,* 915 F.2d at 803 (involving disabled child who was twelve years old at time of Second Circuit appeal). Because Lindsey is now thirteen years old, it would appear that his situation is more analogous to that of Christopher P. than to the plaintiff-student in *Honig.* No matter. Even if we were to resolve the first mootness factor in favor of Lillbask's suit on Lindsey's behalf, the case would not present a live controversy absent a "reasonable expectation" that, in the future, Lindsey will again be subjected to an IEP that proposes to place him out

of the mainstream environment of the Redding public schools. The record in this case demonstrates that there is no such reasonable expectation.

### b. A "Reasonable Expectation" of Repetition

As the Supreme Court has recognized, to avoid a mootness dismissal, a "reasonable expectation" of repetition must be more than "a mere physical or theoretical possibility." *Murphy v. Hunt*, 455 U.S. at 482, 102 S.Ct. 1181; *accord Russman v. Board of Educ.*, 260 F.3d at 120 ("To create a reasonable expectation of recurrence, repetition must be more than theoretically possible."); *Dennin v. Conn. Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir.1996) ("[M]ere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence.") (internal quotation marks and citation omitted). In *Honig*, a case on which Lillbask heavily relies, the Supreme Court noted that controversies have sometimes been found "capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable." 484 U.S. at 319 n. 6, 108 S.Ct. 592. This court, however, has explicitly rejected efforts to read *Honig* broadly to require "only that repetition could possibly occur, not that there is a probability that it will [occur]."

*Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 82 (2d Cir.1991) ("We do not believe that the majority in *Honig* went that far.").

In *Honig*, an emotionally disturbed student claimed that education authorities had violated the EHA by excluding him from school in response to his disruptive and dangerous behavior. In concluding that there was a "reasonable likelihood" that the challenged exclusion would recur in that case, the Supreme Court focused on three factors: (1) the student's statutory right to a free appropriate public education "to the maximum extent appropriate" with children without disabilities, *Honig v. Doe*, 484 U.S. at 318, 321, 108 S.Ct. 592 (quoting 20 U.S.C. § 1412(5) (1994)); (2) the unusual "nature of [the student's] disability," *id.* at 318, 108 S.Ct. 592; and (3) the school officials' insistence on their right unilaterally to exclude the student from class, *see id.* at 318–19, 108 S.Ct. 592. Applying those same three factors to this case, we conclude that only the first weighs in Lillbask's favor. Because Lindsey is thirteen years old, he will remain eligible for a free appropriate public education with non-disabled peers for several more years, until he "graduate[s] from high school or reaches age twenty-one, whichever occurs first." Conn. Gen.Stat. § 10–76d(b) (2003).[4] The remaining two factors, however, demonstrate that repetition of the defendants' challenged conduct—the proposed removal

---

4. IDEA provides that "[a] free appropriate public education is available to all children with disabilities ... between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). We have interpreted the word "inclusive," in this provision, to indicate that a child remains eligible for a free appropriate education under IDEA until his 22nd birthday. *See St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 168 (2d Cir.2001) ("If the word 'inclusive' is to mean something, as it must, it means that the relevant period begins on a child's third birthday and ends on the last day of his 21st year

(which culminates in his 22nd birthday)."). IDEA further provides, however, that "[t]he obligation to make a free appropriate public education available to all children with disabilities does not apply with respect to children aged ... 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(B)(i). Thus, because Connecticut law is more restrictive on this point than IDEA, it controls the term of Lindsey's eligibility for a free appropriate education under IDEA.

of Lindsey from the Redding public schools—is *not* reasonably likely but, at best, only a theoretical and speculative possibility.

(1) *Nothing in the Nature of Lindsey's Disabilities Suggests that Defendants Will Likely Recommend His Removal from the Redding Public Schools*

In *Honig*, there was an inextricable link between the disability at issue—an emotional disturbance originating in the child's history of physical and emotional abuse—and the conduct that prompted the challenged exclusion—disruptive behavior, including stealing, extortion, and sexual harassment. *See* 484 U.S. at 314–15, 108 S.Ct. 592. Precisely because it was the child's "inability to conform his conduct to socially acceptable norms that render[ed] him 'handicapped'" under federal law, the Supreme Court cast off its usual reluctance "to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of ... injury." *Id.* at 320, 108 S.Ct. 592. Noting extensive record evidence that the child could not "govern his aggressive, impulsive behavior," the Supreme Court concluded that, in "the unique circumstances and context of this case," it was "reasonable to expect that he will again engage in the type of misconduct that precipitated this suit" and "equally probable" that he would "again be subjected to the same unilateral school action for which he initially sought relief." *Id.* at 320–21, 108 S.Ct. 592.

Lindsey's disabilities present no similar concerns. Specifically, none of his impairments causes him to engage in conduct that would disrupt or endanger a mainstream class. Quite the contrary, Redding's Special Education Director represented to the district court that Lindsey is "a delightful little boy." Hr'g Tr., Oct. 5, 1998, at 32. Moreover, defendants acknowledge that in the seven years since the challenged IEP was formulated, Lindsey has advanced from grade to grade with his non-disabled peers in the Redding public schools "and continues to be successful in his program." Supp. Br. for Redding Appellees, at 2–3.[5]

In sum, nothing inherent in Lindsey's disability makes it reasonably likely that he will engage in conduct prompting defendants to seek his removal from the Redding public schools and his transfer to a private facility for disabled students.

(2) *Defendants Represent that They Do Not Intend to Remove Lindsey from the Redding Public Schools*

In contrast to the defendants in *Honig*, who throughout the litigation insisted on their continued right to exclude the disruptive child from school, the education authorities in this case only defend the reasonableness of the 1997–1998 IEP proposal to educate Lindsey at St. Vincent's. Having dutifully complied over the years with IDEA's stay-put provision and the district court's preliminary injunction maintaining Lindsey in the Redding public schools, de-

---

5. The decision rendered after the fourth due process hearing in this case concludes, without explanation, that Lindsey's placement in the Redding public schools would likely have an adverse effect on the educational opportunities of other students. To the extent defendants elaborate on this concern in their appellate brief, they reference only the disruptive effect that for some time Lillbask—*not* Lind-sey—had on the work of Redding school staff. *See* Br. for Redding Appellees, at 23–24. Apparently, during the years when IDEA's stay-put provision kept Lindsey in the Redding schools, the adults in this case, i.e., Lillbask and school staff, have managed to put aside their hostilities, at least to the extent necessary to help Lindsey make the undisputed progress that he has achieved.

fendants now acknowledge that he "has flourished educationally" in the latter setting. Supp. Br. for Redding Appellees, at 3. Accordingly, they have made no attempt to move Lindsey from the Redding public schools, even after the district court officially lifted its injunction on March 30, 2002. *See* Br. for Redding Appellees, at 7–8, 15–16. In short, this case is not at all akin to *Sacramento City Unified School District Board of Education v. Rachel H.*, 14 F.3d at 1403, in which the Ninth Circuit concluded that the "conflict is a continuing one and will arise frequently" because "the [School] District and the Hollands have conflicting educational philosophies and perceptions of the District's mainstreaming obligation." Nor is it similar to *Daniel R.R. v. State Board of Education*, 874 F.2d at 1040–41, in which the Fifth Circuit found the challenged conduct "capable of repetition" because school officials and the child's parents have "irreconcilable views" on whether to mainstream the student and "[e]ach side of this controversy steadfastly adheres to its perception of the [law's] mainstreaming requirement." In this case, defendants have expressly represented to this court that they have no present intent to remove Lindsey from his mainstream educational environment in the Redding school district. *See* Br. of Redding Appellees, at 15–16 (noting that "Redding does not intend to place Lindsey out of district"); Supp. Br. for Redding Appellees, at 2–3 (noting that Lindsey "continues to be successful in his program" in the Redding public schools).

■ As this court has observed, "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lamar Adver. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir.2004) (quoting *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir.2002) (per curiam) (further internal citations omitted)). Where, as in this case, challenged conduct has only been proposed but never implemented because a stay-put order has maintained the status quo, it is the first factor that is critical to mootness analysis.[6]

Lillbask asserts that, despite defendants' present concession about the propriety of Lindsey's placement in the Redding schools, they cannot demonstrate that his 1997–1998 IEP challenge is moot because defendants may, in formulating some future IEP, again attempt to place Lindsey at St. Vincent's or at some other private special education facility. The *possibility* of such a move exists in the case of every disabled child who is presently in a mainstream classroom and for whom a new IEP must be prepared annually. A plaintiff must point to something more in the record to lift that possibility beyond the speculative.

In this case, the record indicates that such a removal is not *reasonably likely* to occur. As already noted, defendants candidly acknowledge that Lindsey "has flourished educationally" in the Redding public schools. Supp. Br. for Redding Appellees, at 3. The very fact that he has done so is a

6. In some stay-put cases, courts have recognized a plaintiff's right to sue for collateral injury in the form of reimbursement or compensatory education. *See, e.g., Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 17–18 (1st Cir.2003); *Independent Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769, 774–75 (8th Cir.2001); *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d at 890. For reasons discussed in the next section, we conclude that Lillbask did not properly raise such a claim in this case, and she cannot do so now.

tribute to him and his guardian, but also to the Redding teachers and staff who have obviously committed themselves to helping the child achieve such progress while operating under a stay-put mandate that defendants initially opposed. Although that mandate has now been lifted for almost three years, defendants have made no effort to remove Lindsey from the Redding schools. In these circumstances, there is no reason to doubt the sincerity of defendants' representation to the court or to conclude that a proposal to transfer Lindsey from a mainstream educational environment is reasonably likely to recur. *See generally Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,* 981 F.2d at 59 (noting that "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued").

### 2. *Lillbask Cannot Avoid Dismissal by Raising a Compensatory Education Claim on Appeal*

 In an effort to avoid dismissal of her challenge to the 1997–1998 IEP placement as moot, Lillbask asserts that she presents a live controversy to this court because she sues not only to maintain Lindsey in the Redding public schools but also for compensatory education benefits. Although our court has not specifically addressed the question of mootness in this context, several of our sister circuits have concluded that a claim for compensatory education or reimbursement can defeat a mootness challenge in an IEP placement dispute. In *Maine School Administrative District No. 35 v. Mr. & Mrs. R.,* the First Circuit concluded that "[t]he presence of an actionable claim for compensatory education will insulate an IDEA case against a mootness challenge even after the child's eligibility for special education services ends." 321 F.3d 9, 18 (1st Cir.2003). The Eighth and Ninth Circuits are in agreement. *See Independent Sch. Dist. No. 284*

*v. A.C.,* 258 F.3d 769, 774 (8th Cir.2001) (holding that compensatory education claim is not moot, because "A.C.'s claim in this case concerns obligations the District allegedly had in the past and failed to meet" and because "[t]he remedy sought is compensatory"); *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 890 (9th Cir.1995) (holding that because "[t]he Wartenbergs' claim for reimbursement for . . . tuition is a live controversy[,] . . . [t]his case is not moot"). We need not here decide whether to adopt the reasoning of these courts because Lillbask's pending complaint fails to present properly a claim for compensatory education.

The Supreme Court's decision in *Murphy v. Hunt* is instructive on this point. There, a criminal defendant's declaratory judgment action for release on bail was rendered moot by his conviction. *See* 455 U.S. at 481, 102 S.Ct. 1181. In remanding the case with instructions to dismiss, the Supreme Court explained that the prisoner "no longer had a legally cognizable interest in the result in this case," because "*[h]e had not prayed for damages* nor had he sought to represent a class of pretrial detainees." *Id.* at 482, 102 S.Ct. 1181 (emphasis added).

The failure to plead explicitly a claim for damages prompted this court to dismiss as moot a declaratory judgment action challenging state university regulations on commercial activities in dormitories. *See Fox v. Board of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 137 (2d Cir.1994). The student-plaintiffs argued that their graduation did not render their case moot because their First Amendment claim was compensable with nominal damages. This court rejected the argument. Recognizing that "[t]he inability of the courts to provide relief to Plaintiffs after they left the SUNY system is logically dependent upon the absence of a claim for damages," it

concluded that plaintiffs' "contention fails primarily because there is absolutely no specific mention in [the complaint] of nominal damages. Nor can a request for such damages be inferred from the language of [the complaint]." *Id.* at 141 (internal quotation marks and citation omitted).

Lillbask's Fourth Amended Complaint is similarly bereft of any prayer for compensatory education relief; indeed, the complaint fails to make any mention whatsoever of Lindsey's need for compensatory education. Lillbask submits that her general claim for "other such relief as the Court deems appropriate" is sufficiently expansive to include a compensatory education award. This court, however, rejected an almost identical argument in *Fox*, declining "to read a damages claim into the Complaint's boilerplate prayer for 'such other relief as the Court deems just and proper.'" *Id.* at 141–42; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (ordering remand for dismissal of case as moot, observing that "claim for nominal damages extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection"). In this case, it would be particularly inappropriate to read a prayer for compensatory education into Lillbask's Fourth Amended Complaint because she explicitly included such relief in early iterations of her pleadings, *see* Complaint ¶ 31, First Amended Complaint ¶ 42, Second Amended Complaint ¶ 31, only to delete the demand from her more recent

filings, *see* Third Amended Complaint, Fourth Amended Complaint.

Lillbask asserts alternatively that, even if her complaint fails to seek compensatory education, she raised such a claim in her motion to modify the district court's stay-put injunction. In fact, Lillbask's February 7, 2001 motion presents no such claim. *See* Plaintiff's Motion to Modify Preliminary Injunction of October 5, 1998 ("Motion to Modify"). The motion asked the court to order an updating of Lindsey's IEP to include revised goals and objectives drafted by the parties in June 2000, asserting that "Lindsey will be harmed if his IEP is not updated during the appeals process." Motion to Modify, at 13. In short, Lillbask predicted that Lindsey would suffer future harm without the requested IEP revision; she did not contend that Lindsey had already sustained an injury requiring defendants to provide compensatory education. We note that in an exhibit filed in support of Lillbask's motion, Dr. Linda Rammler used the present rather than future tense to express her opinion that continued reliance on Lindsey's last IEP "is harming" the child and that he faced "irreparable harm" if his IEP was not "immediately" revised and "compensatory education provided to make up for lost time." Motion to Modify, Ex. N, at 25. But such an opinion, filed to support a motion to modify a court's equitable order, does not by itself constitute a claim for compensatory relief against defendants, particularly where none appears in the most recent complaint. Significantly, after the district court denied the motion to modify, Lillbask neither appealed the court's ruling,[7] *see* 28 U.S.C.

---

7. We do not understand the able district judge, in denying plaintiff's particular modification motion, to have absolved defendants of their IDEA responsibility to formulate goals for Lindsey's progress beyond those outlined in the 1997–1998 IEP. *See generally Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321

F.3d at 19–20 ("IDEA charges school districts with making reasonable efforts both to work with parents and to satisfy the needs of special education students.... Knee-jerk compliance with a stay-put provision does not negate that responsibility."). Because the issue is not before us, we need not here address the

§ 1292(a)(1) (providing jurisdiction over appeals from interlocutory orders modifying—or refusing to modify—injunctions), nor sought to amend her pleadings to add a compensatory education claim.[8]

It was not until oral argument before this court that Lillbask plainly asserted that she sought an award of compensatory education for Lindsey in connection with her challenge to the 1997–1998 IEP placement proposal. Such an assertion, however, comes too late to preserve her challenge to that IEP placement as a live controversy. *See Boucher v. Syracuse Univ.,* 164 F.3d 113, 118 (2d Cir.1999) ("A request for damages . . . will not avoid mootness if it was 'inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.'" (quoting *McCabe v. Nassau County Med. Ctr.,* 453 F.2d 698, 702 (2d Cir.1971))); *Fox v. Board of Trs. of the State Univ. of N.Y.,* 42 F.3d at 142 (also quoting *McCabe* ); *see also Seven Words, LLC v. Network Solutions,* 260 F.3d 1089, 1097 (9th Cir.2001) (holding that damages claim raised in supplemental briefing on appeal "only days before oral argument" cannot avoid dismissal of moot equitable claim).

Accordingly, since we conclude (1) that Lillbask's equitable challenge to the 1997–1998 IEP placement proposal is moot and (2) that she cannot now revive that claim by raising a compensatory education prayer for relief not mentioned in her Fourth Amended Complaint, this claim must be dismissed as moot.

### B. *Conn. Gen.Stat. § 10–76h(a)(1)*

■ Lillbask asserts that the application of Conn. Gen.Stat. § 10–76h(a)(1) to her case violated IDEA insofar as the Connecticut statute was invoked to limit the issues she could present at the administrative due process hearings pertaining to Lindsey's 1997–1998 IEP. To the extent Lillbask's § 10–76h(a)(1) challenge pertains only to the 1997–1998 IEP, we have already concluded that an equitable challenge to that never-implemented placement is moot. We now further conclude that there is no likelihood that the alleged statutory wrong will be repeated in the creation of Lindsey's future IEPs because the Connecticut legislature has repealed the offending portion of the statute. *See* Conn. Sp. Sess. P.A. 03–6, § 5 (2003).

■ As this court recently observed, "repeal of a challenged provision [of law] that obviates the plaintiff's claims" will be held to "moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the [defendant] does not believe that the [repeal] renders the case moot." *Lamar Adver. of Penn, LLC v. Town of Orchard Park,* 356 F.3d at 377 (affirming district court's dismissal of challenge to repealed zoning ordinance as

---

means by which defendants attempted to identify and implement appropriate annual educational goals for Lindsey.

8. We further note that, in opposing summary judgment in the district court, Lillbask argued that her timeliness challenge to the fourth impartial due process hearing was not moot because "Lindsey is eligible for compensatory education, a remedy, which would defeat mootness." *Lillbask v. Sergi,* 193 F.Supp.2d at 510. The district court rejected this argument, finding the compensatory education doctrine inapplicable. *Id.* ("The doctrine permits a court to grant a parent compensation for educational services, required but not rendered. Plaintiff seeks the status quo. Plaintiff seeks to preclude Lindsey from being sent to St. Vincent's. The remedy for this is to challenge the hearing officer's determination to place him at St. Vincent's, not compensatory education."). On this appeal, Lillbask challenges neither the district court's ruling that the doctrine of compensatory education is inapplicable to her timeliness challenge nor its dismissal of that challenge as moot.

moot); *cf. Associated Gen. Contractors, Inc. v. City of New Haven,* 41 F.3d 62, 65–66 (2d Cir.1994) (holding case mooted by expiration of relevant ordinance). Nothing in the record before this court indicates that Connecticut plans to reinstate the repealed portion of § 10–76h(a)(1). Indeed, the evidence points to the contrary. Amicus curiae United States Department of Education had previously warned Connecticut that the challenged portion of the state law was inconsistent with IDEA and that continued receipt of federal funding under IDEA depended on the state altering or repealing the provision. *See* Br. for Amici Curiae United States and United States Department of Education, at 2, 20; *see generally Board of Educ. v. Rowley,* 458 U.S. at 179, 102 S.Ct. 3034 (receipt of "federal money to assist state and local agencies in educating handicapped children" premised on "State's compliance with extensive goals and procedures" outlined in federal law). Connecticut responded to this warning by repealing the challenged provision.

Accordingly, to the extent Lillbask challenges the application of the repealed provision of § 10–76h(a)(1), this claim too must be dismissed as moot.

### C. *Vacatur*

■ "When a civil case becomes moot pending appellate adjudication, 'the established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.' " *Arizonans for Official English v. Arizona,* 520 U.S. at 71, 117 S.Ct. 1055 (quoting *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950)); *accord Russman v. Board of Educ.,* 260 F.3d at 121–23 ("Absent a showing that the equities preponderate against vacatur, . . . we will vacate and remand."). Vacating a district court's

judgment and remanding with instructions to dismiss a claim as moot "avoids 'giving preclusive effect to a judgment never reviewed by an appellate court.' " *Van Wie v. Pataki,* 267 F.3d 109, 115 (2d Cir.2001) (quoting *New York City Employees' Ret. Sys. v. Dole Food Co.,* 969 F.2d 1430, 1435 (2d Cir.1992)). Accordingly, we vacate the district court's judgment in favor of defendants on Lillbask's challenges to (1) the proposed 1997–1998 IEP placement and (2) the application of Conn. Gen.Stat. § 10–76h(a)(1), and we remand with instructions to dismiss these claims as moot. Our decision to vacate the district court's judgment is informed by our recognition that our mootness analysis relies, in no small part, on both defendants' conduct since the district court lifted its stay-put order on March 30, 2002, and their representations on appeal regarding Lindsey's continued appropriate placement in the Redding public schools. *See Russman v. Board of Educ.,* 260 F.3d at 122 ("In general, where the appellee has caused the case to become moot, we vacate the district court's judgment to prevent the appellee from insulating a favorable decision from appellate review.").

### III. *Hearing Challenges*

■ Lillbask appeals rulings made by administrative officers at the second and third due process hearings with respect to (1) jurisdiction over safety concerns and (2) reconsideration authority. Lillbask submits that these issues are likely to recur in the preparation of future IEPs for Lindsey. Defendants have not argued—and we find no reason to conclude—that these challenges are moot. Accordingly, we proceed to address them.

### A. *Jurisdiction to Consider Safety Concerns Pertaining to the Educational Needs of a Disabled Child*

At the second due process hearing, Lillbask raised various safety concerns with

respect to Lindsey's proposed 1997–1998 IEP. Specifically, she faulted the IEP (which proposed to place Lindsey at St. Vincent's) for failing to address (1) the training and availability of appropriate substitute teachers and aides for Lindsey; (2) the risks of leaving Lindsey within reach of potential dangers, such as electrical cords; (3) the need to use Lindsey's car seat when transporting him on the school bus; (4) Lindsey's need for other assistive devices, such as his prone stander, wheelchair, and special seat; (5) ensuring that Lindsey is fed to avoid choking hazards; and (6) avoiding placement of Lindsey on a dirty floor during physical education. The hearing officer, defendant Gelfman, concluded that "a special education hearing officer lacks the jurisdiction to investigate safety complaints." Final Decision and Order (May 5, 1997), Case 97–046, at 14. The district court declined to reverse this conclusion, noting that Lillbask "offers no citation or support for her assertion" that IDEA jurisdiction is sufficiently broad to incorporate "safety issues related to the special education needs of a student." *Lillbask v. Sergi*, 117 F.Supp.2d at 197 (internal citations omitted).

However weakly Lillbask may have supported her claim, we conclude that her jurisdictional assertion is correct. IDEA requires a state to implement procedural safeguards providing parents or guardians with "an opportunity to present complaints with respect to *any matter* relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6) (emphasis added). This broad language suggests that Congress did not intend to exclude from consideration any subject matter— including safety concerns—that could interfere with a disabled child's right to receive a free appropriate public education. *See generally Department of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002) ("As we have explained, 'the word "any" has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997))). This conclusion comports with common sense given that some infirmities will likely render disabled children more vulnerable to injury from certain conditions than their non-disabled peers, therefore requiring special accommodations to fulfill the statutory preference for educating such children together to the maximum extent possible.[9]

Further countenancing consideration of safety concerns in planning for the education of disabled students is a provision of IDEA that, notwithstanding the statute's stay-put provision, allows school personnel to seek an expedited hearing if "it is dangerous for the child to be in the current placement ... during the pendency of the due process proceedings." 20 U.S.C. § 1415(k)(7)(C)(i).[10] *See Light v. Parkway C–2 Sch. Dist.*, 41 F.3d 1223, 1227–28 (8th

9. For example, whatever arrangements a school may make to provide for non-disabled children safely to exit a classroom in case of fire or other hazards, if a non-ambulatory child is placed in the same room, further exit arrangements may be necessary to ensure that he can be educated safely.

10. The IDEIA, which will take effect on July 1, 2005, *see supra* at 80 n. 1, moves this provision and alters its language; nevertheless, the explicit statutory concern regarding student safety remains. Under the amended statutory scheme, school personnel may still seek expedited consideration of a disabled student's placement on the ground that "the current placement of the child is substantially likely to result in injury to the child or to others." Pub.L. No. 108–446, § 615(k)(3)(A)-(B), 118 Stat. at 2728.

Cir.1994) (discussing option for school officials to seek injunctive relief, under § 1415, from IDEA's stay-put provision, where then-current placement of disabled student presents serious risk of injury to disabled student or others) (citing *Honig v. Doe*, 484 U.S. at 328, 108 S.Ct. 592); *cf. Gonzalez v. P.R. Dep't of Educ.*, 254 F.3d 350, 352–53 (1st Cir.2001) (recognizing that "clear lines can rarely be drawn between the student's educational needs" and other related issues, such as safety concerns).

In sum, we conclude that the hearing officer erred in ruling that she lacked jurisdiction to consider Lillbask's safety concerns in connection with a proposed IEP. Nothing in IDEA or the case law interpreting its administrative review procedures suggests such a limitation. Accordingly, we reverse the district court's affirmance of Gelfman's ruling and remand the case for further proceedings consistent with this opinion. In so doing, we recognize that because the 1997–1998 IEP was never implemented, it would serve no purpose for the district court to remand this matter to the state education agency for a further due process hearing with respect to safety concerns as to that particular education plan. Instead, on remand the district court should grant declaratory judgment in favor of Lillbask on the jurisdictional issue to ensure that defendants understand that safety concerns may be considered in the development and review of future IEPs for Lindsey.

### B. *Authority to Reconsider Matters Raised at an Earlier Due Process Hearing*

Lillbask submits that the administrative officer at the third due process hearing erred in refusing to reconsider certain issues that the first hearing officer ruled were barred by estoppel. The district court ruled that no federal or state constitutional provision, law, or regulation endows "one hearing officer [with] power over another hearing officer." *Lillbask v. Sergi*, 117 F.Supp.2d at 193. Accordingly, it concluded that the third hearing officer was not bound by the first officer's estoppel order. *See id.* at 197. We agree. We also agree, however, with the district court's observation that the mere fact that the third hearing officer was not bound by an earlier estoppel ruling does not mean that due process required her to hear the underlying challenge herself. *See id.*

■ Under the "law of the case" doctrine, "courts are understandably reluctant to reopen a ruling once made," especially "when one judge or court is asked to consider the ruling of a different judge or court." 18B Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 637 (2d ed.2002). "Reluctance, however, does not equal lack of authority. The constraint is a matter of discretion." *Id.; see also Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir.2001) ("Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." (internal quotations marks and citations omitted)).

■ In this case, it appears that the third hearing officer understandably and appropriately decided not to *re*-hear certain issues that Lillbask had raised before the first hearing officer. Because this decision was well within the hearing officer's discretion, the district court properly affirmed its ruling and we, in turn, affirm this part of the district court's judgment.

### Conclusion

To summarize:

We conclude that Lillbask's federal challenges to (1) the never-implemented 1997–1998 IEP placement proposal and (2) the

review limitations imposed by now-repealed Conn. Gen.Stat. § 10–76h(a)(1) no longer present live controversies. Accordingly, with respect to these two issues, we VACATE the district court's judgment in favor of defendants and REMAND with instructions to dismiss Lillbask's claims as moot.

We further conclude that Lillbask's challenge to the third hearing officer's refusal to re-hear claims already decided by the first hearing officer is without merit, and we, therefore, AFFIRM the district court's judgment in favor of defendants on this issue.

Finally, we conclude that the broad language of 20 U.S.C. § 1415(b)(6) accords administrative hearing officers jurisdiction to review safety challenges to IEPs where such challenges relate to a disabled child's educational placement or the provision of a free appropriate public education plan. To the extent the district court ruled otherwise, we hereby REVERSE this sole part of its judgment award and REMAND the case with instructions that it enter a declaratory judgment in favor of plaintiff on this issue of jurisdiction.