25-475-cv
*Thomason v. Banks*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand twenty-six.

PRESENT:
>     BARRINGTON D. PARKER,
>     SUSAN L. CARNEY,
>     BETH ROBINSON,
>         *Circuit Judges.*

_____

SHANNON THOMASON, individually and as Parent and Natural Guardian of E.P.,

>     *Plaintiff-Appellant*,

>     v.                                                   No. 25-475

DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education, NEW YORK CITY DEPARTMENT OF EDUCATION,

>     *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT: RORY J. BELLANTONI, Liberty & Freedom Legal Group, New York, NY.

FOR DEFENDANTS-APPELLEES: JONATHAN SCHOEPP-WONG (Richard Dearing, Jamison Davies, *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 28, 2025, is **AFFIRMED**.

Plaintiff-Appellant Shannon Thomason, individually and as guardian of E.P., appeals from a judgment of the district court granting summary judgment to Defendants-Appellees David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE") and denying Thomason's cross-motion for summary judgment. Thomason brought this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and related laws and regulations, seeking reimbursement of E.P.'s tuition at a private school called the

International Institute for the Brain ("iBrain") for the 2022–23 school year on the ground that Appellees failed to provide E.P. with a free appropriate public education ("FAPE"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

We review a district court's grant of summary judgment without deference in an IDEA case. *A.C. ex rel. M.C. v. Board of Education of the Chappaqua Central School District*, 553 F.3d 165, 171 (2d Cir. 2009). Our review is "circumscribed" and focuses on whether "the administrative record supports the district court's determination regarding the sufficiency of the state's educational decisions." *W.A. v. Hendrick Hudson Central School District*, 927 F.3d 126, 143 (2d Cir. 2019).[1]

In this "independent review" of the administrative record, federal courts give "due weight" to the administrative proceedings and are "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. v. New York City Department of Education*, 685 F.3d 217, 240 (2d Cir. 2012). However, "deference is not warranted" on "issues of law, such as the proper interpretation of the federal

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

statute and its requirements." *Lillbask ex rel. Mauclaire v. Connecticut Department of Education*, 397 F.3d 77, 82 (2d Cir. 2005). Accordingly, the agency's rulings on questions of procedure are afforded less deference than its determinations regarding educational policy. *See M.H.*, 685 F.3d at 244–46.

Under what is known as the *Burlington/Carter* test, a guardian may obtain reimbursement for private school tuition if (1) the school district failed to offer the student a FAPE, (2) the guardian's chosen placement school was appropriate, and (3) the equities favor reimbursement. *See Ferreira v. Aviles-Ramos*, 120 F.4th 323, 329 (2d Cir. 2024) (discussing *Florence County School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993) and *School Committee of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359 (1985)). To determine whether a student was denied a FAPE, we assess both the procedural and substantive adequacy of the district's actions. *See Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206–07 (1982). We consider Thomason's procedural and substantive challenges below.

I.      **Procedural Challenge**

Thomason contends that DOE denied E.P. a FAPE by denying her meaningful participation in the selection of E.P.'s school placement. She does not challenge the underlying IEP.

4

On April 12, 2022, DOE notified Thomason that it proposed the Robert Kennedy School for E.P.'s 2022–23 school year. More than a month later, on May 16, Thomason emailed DOE to explain that the Robert Kennedy School was wheelchair inaccessible and, therefore, could not accommodate E.P. The record reflects no response to that email. On June 15, Thomason signed an enrollment contract with iBrain for E.P.'s 2022–23 school year. On June 17, she gave DOE notice pursuant to 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb) of her intent to enroll E.P. at iBrain and seek public funding for that placement. DOE responded on June 28, within 10 business days, proposing that E.P.'s IEP be implemented at M751.

After receiving the second placement, Thomason emailed DOE on June 30 with questions about M751 and sought additional information, including a visit to the school, but did not receive a response before the start of the school year, approximately one week later.

Even assuming without deciding that Thomason had a procedural right to advance notice of the DOE's placement of E.P.,[2] not every procedural error will

_____

[2] *See T.Y. v. New York City Department of Education*, 584 F.3d 412, 420 (2d Cir. 2009) (rejecting contention that omission of particular school placement from the IEP deprived parents of their right to meaningfully participate in the IEP's development because regulations affording parents an opportunity to participate in meetings with respect to the educational *placement* of a child afford parents the right to input regarding the *type* of environment in which the child is placed,

5

constitute a denial of a FAPE. *See M.H.*, 685 F.3d at 245. Rather, a procedural violation results in a denial of a FAPE only if it: (1) impeded the student's right to a FAPE; (2) "significantly impeded" the guardian's opportunity to participate in the decision-making process regarding the provision of a FAPE; or (3) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Here, the record does not support a conclusion that any procedural deficiency significantly impeded Thomason's ability to participate in the decision-making process. Thomason participated in the development of the IEP, which establishes the educational requirements that must be met in *any* placement, including M751. Moreover, as the State Review Officer ("SRO") reasonably concluded, based in part on Thomason's filing of the Due Process Complaint on July 6, 2022, the assignment of the student to a school so close to the start of the school year did not preclude Thomason from gathering information about the school.

---

not the specific school location); *but see M.O. v. New York City Department of Education*, 793 F.3d 236, 244–45 (2d Cir. 2015) (concluding that parents may prospectively challenge a proposed placement school's *capacity* to implement an IEP); *FB & EB ex rel. LB v. New York City Department of Education*, 132 F.Supp.3d 522, 538 (S.D.N.Y. 2015) (holding that right to prospectively challenge a placement recognized in *M.O.* implies procedural right to timely information about the DOE's proposed placement "so as to enable them to assess and comment on that placement").

On this record, we conclude that any procedural deficiencies did not deny E.P. a FAPE for the 2022–23 school year.

## II. Substantive Challenge

Thomason contends that the SRO erred in rejecting her claim that the DOE's proposed placement of E.P. at M751 was substantively inadequate because M751 "was not designed to meet E.P.'s unique needs and lacked the related services necessary to permit him to benefit from the instruction." Appellant's Br. 35. Specifically, she primarily argues that M751 did not have sufficient time in its standard school day to provide all the services required by E.P.'s IEP—including 35 periods of special education and 16 hours of related services. She also contends that M751's standard 45-minute class periods are incompatible with E.P.'s many hour-long sessions of related services.[3]

In evaluating this challenge, we give due deference to the SRO's conclusions on matters requiring educational expertise to the extent that they are well reasoned and supported by the record. *See M.H.*, 685 F.3d at 244. Here, the SRO concluded

---

[3] At oral argument, Thomason's counsel seemed to argue, for the first time, that M751 could not accommodate the IEP requirement that E.P. develop sidewalk navigation skills. This argument is not properly before us because it is well established that an appellant forfeits any argument not raised in her opening brief. *See JP Morgan Chase Bank v. Altos Hornos de Mex.*, 412 F.3d 418, 428 (2d Cir. 2005).

that M751 had the capacity to implement E.P.'s IEP and that the proposed placement was reasonably calculated to provide educational benefit. The SRO's conclusion is supported by testimony from M751's Unit Coordinator that the school could deliver the services specified in the IEP by providing some related services as "push-in" services, meaning they are integrated with regular special education classes and thus do not require additional time, and by contracting with outside providers as necessary to comply with the requirements of the IEP. Moreover, the SRO pointed to testimony from the same Unit Coordinator that E.P.'s related services could overlap with a period and a half, such that the 45-minute class periods at M751 would not be an impediment to compliance with the IEP. Ultimately, the SRO concluded that Thomason's assertion that M751 lacks the capacity to provide the requisite services is speculative. The SRO's determination that M751 has the capacity to comply with E.P.'s IEP reflects a well-reasoned educational judgment grounded in the record, and we thus defer to it.

Although a guardian is not required "to send their child to a facially deficient placement school prior to challenging that school's *capacity* to implement their child's IEP," *M.O. v. New York City Department of Education*, 793 F.3d 236, 245 (2d Cir. 2015) (emphasis added), "speculation that the school district will not

8

adequately adhere to the IEP is not an appropriate basis for a unilateral placement." *Id.* at 244.

* * *

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court